ERNEST G. LYON *vs.* WILLIAM H. LYON, and others, Executors.

Kennebec.    Opinion January 30, 1896.

*Will.  Nephew.  Illegitimate Children.  Title by Descent.  R. S., c. 1, § 6; c. 24, § 1, cl. III; c. 75, § 3; Stat. 1864, c. 262; 1887, c. 14.*

A testatrix made the following bequest: "I give and bequeath to each of my nephews and nieces who shall be living at the time of my decease, $2000." An illegitimate son of the brother of the testatrix was born after March 24, 1864, and its parents married subsequently to his birth. *Held*; (1) That inasmuch as the son was not specially named or designated in the bequest, his rights must be governed by c. 14, Public Laws of 1887, which was in force when the will was made and when the testatrix died.

(2) That by force of that statute he took no rights as devisee or legatee under the foregoing provision of the will of the testatrix whereby she made certain bequests to her "nephews."

(3) That the statute applies to rights by inheritance or descent of intestate and not testate property. These rights are entirely distinct.

(4) That the concluding clause of c. 262, Laws of 1864, relating to the settlement of illegitimate children wherein it was provided that they should follow and have the father's legal settlement, "and shall be deemed legitimate to all intents and purposes," related to pauper settlements, and not to the law of descent of property.

(5) The legislative intention must prevail in the construction of statutes whenever that intention can be ascertained.

*Brewer* v. *Hamor*, 83 Maine, 251, distinguished.

ON EXCEPTIONS.

This was an action of debt brought in the Superior Court, for Kennebec county, to recover from the executors of the will of Abigail Sanford the sum of $2000 under the following provision of her will: "I give and bequeath to each of my nephews and nieces who may be living at the time of my decease, $2000."

The plea was the general issue. The plaintiff claimed to be the illegitimate son of Tabor Lyon, who was the brother of

Abigail Sanford, and, although illegitimate, to be entitled to this legacy under Stat. 1887, c. 14.

1. On this point the presiding judge instructed the jury, pro forma, as follows : . . . "I instruct you, pro forma, that if you shall find that the plaintiff was the illegitimate son of Tabor Lyon, born after March 24, 1864, and that Tabor Lyon after the plaintiff's birth married his mother, or adopted him into his family, he thereby became to all intents and purposes his legitimate child, and therefore the nephew of Tabor Lyon's sister, Mrs. Sanford ; and consequently capable of taking as legatee in the class designated 'nephews' in her will, and the term must be understood in its ordinary and usual sense."

To this instruction the defendants took exceptions.

The defendants seasonably requested the following instructions, all of which were declined by the presiding judge except as given in the charge :

(1.) "That independent of any statute, the law fixes the meaning of the word 'nephews' in clause twelve of Abigail Sanford's will, and excludes any nephew not legitimate."

(2.) "That the statute of 1887, chapter 14, confers rights in derogation of the common law, and must be construed strictly."

(3.) "That this statute governs the distribution of estates only where there is no will, and confers rights of heirship or inheritance only."

(4.) "That the legal meaning of an 'heir' or an 'inheritor' is one who takes an estate undisposed of by will, as contra-distinguished from an estate left by will."

(5.) "That the statute of 1887 does not govern this case, and that the plaintiff cannot recover here, whether he be or not the natural son of Tabor Lyon."

*H. M. Heath and O. A. Tuell,* for plaintiff.

Counsel argued : (1) The verdict finds that Ernest G. Lyon was born illegitimate July 3, 1865. His father, Tabor Lyon, and the mother were legally married February 20, 1873. The testatrix was his father's sister.

(2.) Chapter 262, Laws of 1864, is still in force, found in R. S., 1883, c. 24, § 1, Item III.

(3.) That children born illegitimate shall be "deemed legitimate" in case of intermarriage and adoption was the law in R. S., 1857, c. 75, § 3, and still exists as law, though inappropriately collocated in R. S., 1883, c. 24, § 1, Item III, last sentence.

(4.) The law of 1887 only repealed R. S., 1883, c. 75, §§ 3 and 4. It did not repeal c. 262, 1864, nor R. S., 1857, c. 75, § 3, both preserved in R. S., 1871, c. 24, § 1, Item III, re-enacted without change in R. S., 1883, c. 24, § 1, Item III.

(5.) By Nos. 2, 3 and 4, it is plain that the law as enacted in c. 262, 1864, to-day provides that, after subsequent marriage, illegitimate children become "legitimate to all intents and purposes."

(6.) The rule given in exception first follows, even in words, the law of 1864 and is strictly correct.

(7.) The law of 1887 and *Brewer* v. *Hamor*, 83 Maine, 251, confirm the above positions.

(8.) The requested instructions are necessarily involved in exception first. If that rule is correct, they all fail.

(9.) The word "nephew" is to receive the legal definition. The testatrix is presumed to have used the word with reference to the law.

(10.) A nephew is the legitimate son of a sister's brother. Prior to March 20, 1864, such child must have been born in wedlock. Since that date, intermarriage after birth is the full equivalent of marriage before birth.

Counsel cited: *Power* v. *Hafley*, 35 Ky. 671; *Carroll* v. *Carroll*, 20 Tex. 731; *Ross* v. *Ross*, 129 Mass. 243; *Miller* v. *Miller*, 91 N. Y. 315; S. C. 43 Am. Rep. 669; *Adams* v. *Adams*, 36 Ga. 236; *Washington* v. *The State*, Id. 242; *Graham* v. *Bennett*, 2 Cal. 503; *Brewer* v. *Hamor*, 83 Maine, 254; *Com.* v. *Munson*, 127 Mass. 461; *Burrage* v. *Briggs*, 120 Mass. 107; *Sewall* v. *Roberts*, 115 Mass. 276; *Wyeth* v. *Stone*, 144 Mass. 441; *Humphries* v. *Davis*, 100 Ind. 274; S. C. 50 Am. Rep. 788; *Estate of Newman*, 75 Cal. 213; S. C. 7 Am. St. Rep. 146; *Wagner* v. *Wagner*, 50 Iowa, 532; *Atchison* v. *Atchison*, 11 Ky. Law Rep. 705; *Rowan's Appeal*, 132 Pa. St. 299; *Brower* v. *Bowers*, 1 N. Y. Appeals (Abbott,

p. 227) ; *McGunnigle* v. *McKee*, 77 Pa. St. 81 ; S. C. 18 Am. Rep. 428 ; •*Dickinson's Appeal*, 42 Conn. 491 ; S. C. 19 Am. Rep. 553 ; *John* v. *Sabattis*, 69 Maine, 477 ; *Ash* v. *Way*, 2 Gratt. 203 ; *Buckley* v. *Frasier*, 153 Mass. 525 ; *Grundy* v. *Hadfield*, 16 R. I. 579 ; *Rogers* v. *Weller*, 5 Biss. 160 ; *Estate of Wardwell*, 57 Cal. 484 ; *Dayton* v. *Adkisson*, 45 N. J. Eq. 603 ; *McCalla* v. *Bane*, 45 Fed. Rep. 828 ; *Re Jessup's Estate*, (Cal.) 21 Pac. (1889) p. 976 ; *Hartwell* v. *Jackson*, 7 Tex. 576 ; *Sleigh* v. *Strider*, 5 Call, (Va.) 439 ; *Clements* v. *Crawford*, 42 Tex. 601 ; *Daniel* v. *Slarus*, 17 Fla. 487.

*Orville D. Baker and Leslie C. Cornish*, for defendants.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WISWELL, JJ.

FOSTER, J.    Action of debt to recover a legacy of $2000 mentioned in the last will of Abigail Sanford, who was the sister of the plaintiff's father.

The testatrix died August 7, 1889, having in the preceding April, executed her will under which the plaintiff claims as one of her nephews, by force of the following item : "I give and bequeath to each of my nephews and nieces who shall be living at the time of my decease, $2000."

The facts present the following as the principal question : Can an illegitimate son, born after March 24, 1864, whose parents intermarried subsequently to his birth, take by the will of his father's sister a legacy bequeathed to her nephews?

As the plaintiff is not specially named in the bequest, the decision of that question depends upon the proper construction of Stat. 1887, c. 14, which was the statute in force when the will was made and the testatrix died, and was enacted in lieu of R. S., c. 75, §§ 3 and 4, which latter sections were expressly repealed.

The exceptions state that the plaintiff claimed, although illegitimate, "to be entitled to this legacy under chapter fourteen of the Public Laws of 1887."

The statute provides : "An illegitimate child born after March

24, 1864, is the heir of his parents who intermarry. And any such child, born at any time, is the heir of his mother. And provided the father of an illegitimate child adopts him into his family, or in writing acknowledges before some justice of the peace, or notary public that he is the father, such child is also the heir of his father. And in either of the foregoing cases, such child and its issue shall inherit from its parents respectively, and from their lineal and collateral kindred, and these from such child and its issue the same as if legitimate."

The above statutory provisions specify three distinct conditions of fact, upon the existence of any one of which an illegitimate child becomes the heir of his father: (1) When his parents intermarry; (2) When his father adopts him into his family; or, (3) acknowledges in writing before the officer named, that he is his father.

The first condition is contained in a sentence by itself, separated from the second and third by an independent sentence which declares the child, whenever born, to be the heir of his mother. Then after that independent sentence, follow the second and third alternative conditions by adoption or acknowledgment in the manner prescribed, one or the other of which makes him the heir of his father. Next follows the sentence pertaining to inheritance, viz: "And in either of the foregoing cases, such child and its issue shall inherit," etc.

The strictly accurate and authoritative signification of the word "either" relates to two units or particulars only — "being one or the other of two, taken indifferently as the case requires; being one or the other of two; being both of two, or each of two taken together, but viewed separately." Cent. Dict. "One or the other, properly of two things." Webster.

If we were to adopt the foregoing signification, a strict grammatical construction of this sentence would restrict and confine its effects to the second and third conditions, neither of which applies to the plaintiff. But the application of the accurate signification of words as laid down by lexicographers and the strict rules of grammatical construction oftentimes fail of reaching the real intent of statutes. Hence, although "properly

*either* refers indefinitely to one or the other of two, it often in actual use, although inaccurately, refers to some one of many." Cent. Dict. And Webster in one definition defines "either" as "one or another of any number." And this in our opinion was the sense which the legislature intended; and the clause, there-- fore, should be construed as if it read — "and in either of the three foregoing cases such child and its issue shall inherit," etc. See *Messer* v. *Jones*, ante, 349, a very recent decision of this court to the same point.

It is by force of legislative enactment alone that the plaintiff is heir of his father. At common law it was otherwise, and under that law he would have no rights of inheritance. *Cooley* v. *Dewey*, 4 Pick. 93. Although an heir of his father by the provisions of the statute, can the plaintiff take under a bequest in the will of his father's collateral kindred, which gives a legacy to each of such kindred's nephews as a class, unless his name or some other designating identification is mentioned therein as the object of her bounty? By the common law he evidently could not; for legacies to nephews, like those to children, include only such as are legitimate. *Bolton* v. *Bolton*, 73 Maine, 299, and cases cited on page 309; *Re Brown*, 58 L. J. Ch. 420; *Re Hall*, 35 Ch. Div. 551; *Kent* v. *Barker*, 2 Gray, 535, 536.

But the plaintiff's learned counsel now contends, that while it is true that the case was tried upon the supposition that the foregoing statute was the only one which had any reference to the subject matter, yet in fact there were other statutory provi- sions which have since been discovered as existing at the time, which, together with the statute of 1887, control this case and support the ruling of the court as given at the trial. These provisions are to be found in the final sentence of chap. 262; Laws of 1864, which reads thus: "When the parents of any child which may be hereafter born illegitimate shall intermarry, such child shall be the legal heir of the father as well as of the mother; shall follow and have his legal settlement, and shall be deemed legitimate to all intents and purposes."

And it is claimed, furthermore, that in consolidating and

revising the then existing statutes upon the rights of illegitimate children, an important part of the act of 1864 was omitted from c. 75, R. S., § 3,—that after the intermarriage such children "shall be deemed legitimate to all intents and purposes;" notwithstanding the equivalent of that important element, in breaking up the chapter, was transferred to c. 24, R. S., § 1, item III, relating to paupers, where it appears in these words, "they are deemed legitimate and have the settlement of the father." It is also claimed that the dividing up of the law of 1864 was improperly done; that the words "shall follow and have his legal settlement" should have been made a part of R. S., c. 24, relating to paupers, and the words "shall be deemed legitimate to all intents and purposes," should have made a part of R. S., c. 75, § 3, relating to illegitimates. And, moreover, that as chapter fourteen of the Laws of 1887, repeals only sections 3 and 4 of chapter 75, R. S., the important element of the enactment of 1864,—"shall be deemed legitimate to all intents and purposes," which was transferred to chapter 24, R. S., § 1, item III, still remains as the law of this State, applying to illegitimates, and should govern in the decision of this case.

But, notwithstanding the very elaborate argument of the learned counsel for the plaintiff, we are not satisfied that such a construction as contended for should be applied to the Act of 1864. The legislative intention must prevail in the construction of statutes whenever that intention can be ascertained. "And if it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." *United States* v. *Freeman*, 3 Howard (U. S.), 565.

In the first place, it will be noticed that this Act of 1864 was expressly repealed by the revision of 1871, pages 935, 936, and its parts broken up, preserved and distributed, first under § 1, par. 3, of c. 24, relating to "paupers;" and, second, under § 3, c. 75, relating to "title by descent." It never as a whole formed a part of any deliberate revision of the statutes. In the

revision it was the duty of the commissioners to codify, collocate and revise this law.   In doing this, that part of the statute which under certain conditions legitimized illegitimates was relegated to the "pauper" law, and was so condensed as to make it clear that it meant to legitimize only so far as affecting the pauper settlement of the illegitimate.   And all that part · of the statute which the legislature intended to affect inheritance was carried to chapter seventy-five, section three, relating to "title by descent."   This sundering of the different provisions of the statute is strong evidence of the legislative intent as to its meaning when considered in connection with the sanction that was given by the revisions of 1871 and 1883, whereby the legislature reaffirmed this deliberate expression of its will by re-enacting the same context and subject matter for each fragment of the Act of 1864.   From 1871 to the present time the general phrase as to legitimacy has been inseparably linked by legislative enactments to the question of pauper settlement, and its meaning has been confined to that subject; and this fact is one of the strongest arguments, not only as to the legislative intent, but also as to the legislative declaration of its meaning.

. The act in question made no reference to any pre-existing statute, but it necessarily altered the statute of 1857 by adding to the conditions which made an illegitimate child an heir of his father, that of intermarriage of its parents; and it also gave to him the settlement of the father.   If the final clause of the Act of 1864,— "shall be deemed legitimate to all intents and purposes"— was to apply to anything further than pauper settlement, then it must be held to repeal by implication a part of the second provision of section 3 of chapter 75, of the statute of 1857, as to illegitimates born after 1864, because if the parents intermarry then the child would inherit from lineal and collateral kindred even if there were no other children, or acknowledgment, or adoption, contrary to the statute of 1857. Yet the existing statute thus to be repealed was not even alluded to in the Act of 1864, and its provisions were substantially re-enacted by the revisions of 1871 and 1883 in utter disregard of the Act of 1864, and of any supposed repeal effected by it.

The provisions of the first clause of section 3, chapter 75, in the revisions of 1871 and 1883, that such child shall be the heir of parents who intermarry, is made entirely unnecessary and useless if the construction contended for were to prevail, inasmuch as the general expression in the pauper law,—"when the parents of such children born after March 24, 1864, intermarry, they are deemed legitimate and have the settlement of the father,"—would fully cover the subject.

Why, then, has the legislature in the revisions since 1864 so carefully guarded these rights of inheritance from lineal and collateral kindred by specific provisions in the chapters on "descent," if they knew and intended that such rights had already and more broadly been given by a provision existing in the pauper law?

By examining the last clause of section 3, chapter 75, in the revisions of 1871 and 1883, it will be found to be not only inconsistent with, but repugnant to, such a construction of that provision in the pauper law. One would authorize an inheritance from lineal and collateral kindred upon the sole fact of intermarriage of parents. The other allows inheritance from such kindred only upon certain conditions expressly stated in the statute, "and not otherwise." The necessary confusion that must arise in reference to title by descent, and the uncertainty of titles which must result, were we to hold that the provision in the pauper law to which we have alluded, was to apply to the law of descent, are certainly strong arguments to show that the legislature intended to do just what was done, to limit the several provisions of the Act of 1864 to the several subjects under which it finally classified them.

Nor is there anything in the decision of *Brewer* v. *Hamor*, 83 Maine, 251, which militates in the least against the construction which we place upon the acts under consideration. The opinion does not hold that intermarriage alone gives the illegitimate full and equal rights "to all intents and purposes" with children born in lawful wedlock. But it does hold, as therein stated, that an illegitimate child born after March 24, 1864, is the heir of parents who intermarry; and such child, born

at any time, is the heir of his mother, and of any person who acknowledges himself to be his father in writing signed in the presence of and attested by a competent witness; and if his parents intermarry and have other children before his death, or his father so acknowledges him, or adopts him into his family, he shall inherit from his lineal and collateral kindred, and they from him, as if legitimate; but not otherwise. And this decision was in reference to the rights of illegitimate children prior to the statute of 1887, viz: R. S., 1883, chapter 75, section 3.

We have given this extended consideration to the Act of 1864 because of the importance attached to it by counsel for the plaintiff. We are satisfied that the plaintiff's rights must be measured, as we have before stated, by the Act of 1887. That being in derogation of the common law, while it is to be construed with reference to the legislative intent, and with a view to the object aimed to be accomplished, cannot properly be extended by construction so as to embrace cases not fairly within the scope of the language used. *Dwelly* v. *Dwelly*, 46 Maine, 377; *Swift* v. *Luce*, 27 Maine, 285; *Shaw* v. *Railroad Co.* 151 U. S. 557; *Denn* v. *Reid*, 10 Pet. 524, 527. Moreover, in the construction of statutes "words and phrases shall be construed according to the common meaning of the language. Technical words and phrases, and such as have a peculiar meaning convey such technical and peculiar meaning." R. S., c. 1, § 6. And when the language of a statute is clear and plain, the court has no authority to give it a construction different from its natural and obvious meaning. *Clark* v. *Maine S. L. R. R. Co.* 81 Maine, 477.

Recurring to the statute under consideration, it is found to contain only one objective point — heirship or the right of inheritance. Its title is "An act to provide for the descent of intestate estates of and to illegitimates;" and it was enacted in lieu of sections 3 and 4 of R. S., c. 75, which chapter is also entitled "title by descent," and its provisions exclusively confined to that subject matter. The new act also strictly follows the single subject matter indicated by its title. Through the provisions of this act alone can the plaintiff claim. He does

not claim as and because he is the heir of his father — who is not shown to be dead — or by any right of inheritance of intestate property from any lineal or collateral kindred of his father. But his only claim is for certain testate property under the designation of "nephews" found in the will of his father's sister and collateral kindred. But as seen this act has nothing to do with testate property. Even if he could be considered a nephew as to intestate property, there is no intimation that he could as to property disposed of by will. The right in the one case is absolutely distinct from that in the other. In one case his claim would be founded as heir, or by inheritance; in the other, as devisee. The words "heir," and "inherit," the subject matter of the statute in question, have acquired in law a peculiar and invariable meaning, and that meaning must be applied to this statute. It is confined to those who take intestate as distinguished from testate estates, and whoever claims under a will, claims not as heir or by descent, but by purchase as a devisee or legatee. An "heir" is "one who inherits; one who takes an estate by descent, as distinguished from a devisee who takes by will." Burrill's Law Dict. "Technically in law the person upon whom the law casts an estate in real property immediately on the death of the ancestor, as distinguished from one who takes by will, as a legatee or devisee, and from one who succeeds by law to personal property as next of kin." Cent. Dict. In *Warren* v. *Prescott*, 84 Maine, 483, the distinction is thus sharply drawn: "One who takes under a will does not inherit. To inherit is to take as an heir at law, by descent, or distribution. To take under a will is not to inherit."

As we have before remarked, this statute has provided for cases of inheritance, for the descent of intestate estates of and for illegitimates, and its language is plain and unambiguous. Its interpretation cannot be aided by reviewing or construing the various pre-existing statutes upon this subject, all of which have been repealed and merged in this final declaration of the legislative will.

A testator is presumed to have used words in their ordinary meaning, unless such a construction would conflict with his

manifest intention.    *Osgood* v. *Lovering*, 33 Maine, 464 ; *Richardson* v. *Martin*, 55 N. H. 45 ; *Bolton* v. *Bolton*, 73 Maine, 299, 308.    And where legacies or devises are given to a "child," or "children" of some person named, or to "nephews," these words mean, prima facie, legitimate children or nephews. *Bolton* v. *Bolton*, supra ; *Kent* v. *Barker*, 2 Gray 535, 536. There is no word or phrase in that clause of the will, under which the plaintiff claims, indicating that the testatrix used the word "nephews" in any other than its ordinary and legal signification. Nor does the case disclose any facts from which we might properly draw any such inference.    The plaintiff is not specifically mentioned ; nor is there any designating identification by which he can be considered as the object of her bounty under that clause wherein the testatrix bequeaths the sum of $2000 to each of her nephews who may be living at the time of her decease.

*Exceptions sustained.*