No. 4633.

Court of Appeal, Parish of Orleans.

DOMINICK MUMPHREY VS. PLANTERS' FERTILIZER AND CHEMICAL COMPANY, AND N. P. PRATT LABORATORY.

1. Where the proprietor of the ground has confided the erection of a building to a capable contractor, and exercises no supervision over the work in which the contractor is employed, and has no control over the laborers employed by said contractor, no liability can be imposed upon said proprietor for any damage which may have been caused to another by the acts of the employees of said contractor.

2. A plaintiff must not only show that no negligence on his part contributed originally to the injury, but he must also show that due care was exercised in avoiding consequential damage.

3. In a case of mutual negligence, the true principle is that no action for damage can be maintained, if the negligence of each party was a proximate cause of the injury sustained.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson.

C. Hunt and H. Mithoff, for Plaintiff and Appellant.

Denegre & Blair, H. H. Chaffe and J. Armstrong, for Defendant and Appellee.

ESTOPINAL, J. Plaintiff sued to recover the sum of eight hundred and ten dollars ($810) from defendants, in solido, averring that they confederated and combined to contrive and commit the torts and damage complained of, by permitting and directing a large number of laborers to invade and trespass on plaintiff's land, and there to cause such nuisance as to render impossible the harvesting of a certain crop of okra; and also, that the defendants, pursuant to the contract between them for the injury of the plaintiff, are jointly responsible for the injury and partial destruction of a certain "line fence," through which cattle were enabled to enter upon the lands of plaintiff and destroying certain growing crops of vegetables.

The Fertilizer Company interposed certain exceptions, which were overruled and thereupon answering, pleaded the general issue and especially denied any conspiracy with the N. P. Pratt Laboratory to damage plaintiff's property, denied liability, and alleges contributory negligence.

—131—

The N. P. Pratt Laboratory also tenders the general issue, denies especially the charge of conspiracy with the Planters' Fertilizer and Chemical Company, and denies having had anything to do with the building of a spur track, the construction of which, in close proximity to the line fence, is alleged by plaintiff to have been one of the acts which contributed to the injury to said fence.

Pretermitting any discussion of exceptions interposed by the Fertilizer Company, overruled by the Lower Court and mention of which we have designedly avoided, we take up the merits of the case.

The judgment of the lower Court is in favor of plaintiff and against the N. P. Pratt Laboratory Company, but the demand against the Fertilizer and Chemical Company is rejected.

Our examination of the record satisfies us of the correctness of the judgment below insofar as the Planters' Fertilizer and Chemical Company is concerned. The liability of this defendant, if any, could have arisen only through its active participation in the work of construction, which it is averred, was both the direct and indirect cause of the alleged damage to plaintiff.

The Planters' Fertilizer and Chemical Company shows that it owned a tract of land comprising about 11 acres at Shrewsbury, in the Parish of Jefferson, and, contemplating the erection of a manufacturing plant on said tract, it contracted with a certain person for the construction of a railroad grade; that thereafter it contracted with another (the I. C. R. R. Co.), for the laying of the rails on the said grade, and lastly, it contracted with the N. P. Pratt Laboratory for the erection of a sulphuric acid and acid phosphate plant.

The proof is that the Planters' Chemical Company exercised no control over any of the contractors in the performance of the work, and had no power to exercise any control over them in the execution of the contract.

The record shows that the Planters' Fertilizer and Chemical Company had no right to exercise any control or direction of any kind over the men in the employ of the contractors. The only circumstance by which it is intended to show direct participation by the Fertilizer plant, is the employment by it of a small gang of men to unload a carload of material for the factory some time in February, 1905, and the employment of

—132—

a few carpenters during December, 1904. There is no proof that these employees of the Fertilizer Company trespassed on or were in any way responsible for any damage which plaintiff may have suffered.

Plaintiff's petition recites and the record shows that the damage complained of was started during the month of August, 1904, and the devastation of the crop, by men and cattle, was completed by December, 1904. Therefore, the trespass and damage cannot be charged to the Planters' Company, who kept a few men at work for a short time on its property during December, 1904, and again during February, 1905.

Summarizing the case so far as it affects the Planters' Company, we find that all of the work on the property of said Company was performed by independent contractors who exercised exclusive control over their laborers and paid them; that this defendant, proprietor of the ground, had no supervision of the work in which said contractors were employed, and we find no cause to fix liability for the damage claimed upon said proprietor. One cannot be charged with fault for an act beyond his control. Riley vs. S. S. Company, 29 A. 791; Davey vs. Levy & Son, 39 A. 551; Gallinger vs. Southwestern Exposition Association, 28 A. 943.

Now, proceeding to consider the facts upon which judgment for plaintiff was based by the Court aqua, we find them to be substantially as follows:

By a convention or contract signed on the 17th day of August, 1904, the N. P. Pratt Laboratory Company, agreed to erect for the Planters' Company, on a vacant lot, to be supplied by the Planters' Company, at or in close proximity to New Orleans, La., a complete modern sulphuric acid and fertilizer plant. The lot or tract of land upon which the factory was built is located in the Parish of Jefferson, and is bounded on one side (below), by the Hyman Estate, of which the plaintiff was the lessee. His complaint "that the workmen in the employ of the defendant (Pratt's Laboratory), were guilty of committing intolerable, filthy and abominable nuisance on his land to the extent of infecting and destroying the entire crop of okra for the last year of 1904," is borne out by the testimony.

The testimony, however, further shows that though the plaintiff knew all along that his okra patch was being converted into a "country water closet," by the workmen in the employ

—133—

of the defendant, he made no complaint about it until November 8th, 1904, at which time Mr. Mithoff, one of the heirs of this estate, and one of the counsel for plaintiff in this case, complained to the engineer in charge of the construction of the factory (Mr. Ford), who immediately put a stop to the further trespassing by the laborers under him.

It will be noted that the nuisance complained of began, as petition recites, "in the month of August, 1904, and continued and spread over the remaining days of said month, being a continuing tort." Not a word of complaint was made by plaintiff during all the time intervening between the 15th of August, and the 8th of November.

In our view of the law and jurisprudence, his silence is fatal to his right to recover. It was clearly his duty to take some steps to minimize the damage, or at least put the defendant in fault, as it were, by warning it not to further allow its employees to trespass on his place. But if these acts of laborers were not a case in which the party being injured must take steps to minimize the damage which he may suffer, we are firmly of the opinion that the defendant is not liable for the acts of its employees, because these acts were committed outside of the scope of their employment.

The attempt to show that the defendant had not made sufficient provision for its employees by building privies, was not successful. It is shown that these privies were built, and further, the tract of land on which the factory was built consisted of eleven acres, of land, on which the building covered occupied only three leaving nine acres of land which the defendants' employees were at liberty to use in answering the calls of nature. That they choose to go over into the neighbor's field is a matter for which the employer, who is not shown to have ordered or directed them to do so, cannot be held responsible.

We cannot help again to say, that it would have been the easiest thing in the world for plaintiff to have put a stop to the trespass. The remedy was simple: A complaint at the very beginning to the nearest Justice of the Peace, an arrest, and all the trouble, nuisance and damage, averted.

In McDermott vs. Brewing Co., 105 La. 124, the Supreme Court after reviewing the jurisprudence and examining the commentators on that subject, decided that "corporations are

—134—

liable for the torts of these servants to the same extent as private individuals, but no further. If a servant goes outside of his employment without regard to his service, acting with malice, and wantonly causes damages to another, the master is not liable.''

The act of these laborers in trespassing upon plaintiff's property was not in the furtherances of the defendant's work, nor in the protection of its interest.

LeBretonne vs. Kennedy, 27 A. 432, is a case very much in point. A laborer, while plowing, threw a lighted match into the dry hay, and the fire was communicated over into the neighbor's property, and some buildings belonging to him were destroyed. The Court held this to be an act not within the scope of the laborers' employment, and held the employer free of liability. Ware vs. Barataria, 15 La. 169.

We have read with care the testimony bearing on the condition of the line fence between the property of the Planters' Fertilizer and Chemical Company, and the Hyman Estate (of which plaintiff was the lessee), and find, possibly by reason of the ignorance of most of the witnesses, that it is difficult to arrive at a certain, positive conclusion as to who was responsible for the breaking down of the fence. We are satisfied of one fact, and that is that the fence was an old rickety affair, built many years ago, and that if it stood at all and offered protection from cattle, it was because it was held in position by a rank growth of vines and weeds. The posts were rotten, and it is testified by some witnesses that the fence was rotten and *down in places.*

From our appreciation of the testimony, we do not think the evidence shows the defendant responsible for the injury to the fence, but be that as it may, we are of the opinion that plaintiff's utter disregard of his plain duty to repair the fence at the earliest possible moment, and thereby minimize the damage, deprives him of the right to recover any damage at all.

Though there is no proof that the cattle which went over into plaintiff's field, came on from the Planter's Company property, and entered plaintiff's field through the openings in the fence opposite the fertilizer plant, we will admit, arguendo, that such was the case—plaintiff says that the cattle came into his vegetable patch every day, and that he saw when they were driven out, and that they began to come into his place

in October, and continued so to do for two months, and that in that time entirely destroyed his crop. During all this time: plaintiff made no complaint, made no effort to repair the break in the fence, but simply sat down and waited. He spoke to Mr. Mithoff on election day, he says, and the latter notified the defendant, who at once repaired the fence at the trifling cost of fifteen dollars ($15.00), or twenty dollars ($20.00).

Plaintiff under this record has certainly contributed to produce the conditions of which he complains, and in consequence cannot recover.

In the case of Mailhot vs. Pugh, cited on defendant's brief, the Supreme Court said:

"He who has, by his fault, contributed to that of another who has by his obstinacy or bad judgment, or indolence, himself been the author of his own misfortune, and has contributed to produce the condition of which he complains, cannot invoke in his behalf and for indemnification, an equitable principle which was intended to apply only for the benefit of those who are without fault in the particular matters that form the subject of complaint."

"If it be true that there was mutual negligence, the principle is, that when the negligence of each party was a proximate cause of the injury, no damage can be maintained. In such cases, there cannot be usually an apportionment of damages." Levy vs. Carondelet Canal vs. Navigation Company, 34 A. 180.

In Insurance Company et al. vs. Werlein, this question is exhaustively treated, the Court holding that: "In case of mutual negligence, the true principle is that no action for damage can be maintained if the negligence of each party was the proximate cause of the injury sustained."

Mr. Hale says: "The injured party's own negligence or wilful fault in failing to take reasonable precaution to reduce the damage after notice of defendant's wrong, is proximate cause of such injuries."

In an action for an injury occasioned by the negligence of another, it is a good defense to show that the injury so far arose from the negligence of the plaintiff himself, that he might, by ordinary care and caution have avoided the injury." 1 Sedg-

wick on the Measure of Damages, 164, 165; Starkie on Evidence, 741.

Mr. Sutherland says: "The principle that the injured party must reasonably exert himself to prevent damages, applies alike to cases of contract and tort." 1 Sutherland 152. "In case of wrongful injury to person or property, injured party is required to use reasonable exertion to lessen or moderate the resulting damage." Ibid, 154.

We think the record fully proves that Mumphrey did not employ any reasonable exertion to lessen or moderate the resulting damage; that he did not use due care in avoiding all consequential damage by taking the necessary steps to protect his own property. Conceding that defendant, Pratt Laboratory, was negligent in the premises, it is manifest that Mumphrey was equally aware of the conditions of the fence and the danger which threatened him, and therefore, the fault of both is mutual, in which case no damages can be maintained. 34 A. 180.

The judgment rendered against the N. P. Pratt Laboratory is error and must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from in favor of plaintiff, and against the N. P. Prass Laboratory, be, and it is hereby annulled, reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of the N. P. Pratt Laboratory, dismissing plaintiff's demand, and in all other respects the judgment is affirmed, plaintiff to pay all costs.