## CHARLES BAKER, Respondent, v. THOMAS STUCKER et al., Appellants.

In the Kansas City Court of Appeals, March 5, 1923.

1. **BASTARDS:** Children: Statute with Reference to Descent of Property of Persons Dying Intestate, Held to Provide Right of Inheritance for "Legitimate" Children Only. Section 303, Revised Statutes 1919, providing that when any person having title to any estate shall die intestate, his property shall descend and be distributed to his children, means "legitimate" children, and section 514, Revised Statutes 1919, providing that if any person

shall make his last will, and die, leaving a child or children, not named as provided for in such will, he shall be deemed to die intestate as to them. Section 311, Revised Statutes 1919, in reference to *bastards* and using only the term "bastard children" merely allows them the right of inheritance which legitimate children have in cases of intestacy; so that section 514, Revised Statutes 1919, when taken by itself, means only legitimate children, and there is nothing in the other sections to show that the words "child" and "children" were used in any other sense than their common-law meaning.

2. ———: Statutes: Construction: Statutes Giving Bastards Complete Inheritable Blood so Far as Their Mothers are Concerned, Should be Liberally Construed. Statutes such as section 311, Revised Statutes 1919, providing bastards shall be capable of inheriting and transmitting inheritance on part of their mother, give bastards complete inheritable blood so far as their mothers are concerned, and should be liberally construed in favor of the class sought to be relieved.

3. ———: Under Inheritance Statute Bastards are Only Quasi-legitimate; "Quasi" Indicating That One Subject Resembles Another with Which it is Compared in Certain Characteristics, But That There Are Also Intrinsic Differences Between Them. Under section 311, Revised Statutes 1919, providing that bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, a bastard is only "*quasi*-legitimate as to his mother, 'the term "*quasi*" indicating "that one subject resembles another with which it is compared in certain characteristics, but that there are also intrinsic differences between them."

Appeal from the Circuit Court of Daviess County.—
*Hon. Arch B. Davis*, Judge.

REVERSED.

*L. B. Gillihan* and *Dudley & Brandon* for respondent.

*Nat G. Cruzen* for appellant, Meth. Church; *J. C. Leopard & Son* for W. R. Handy, Executor; *Davis & Ashby, Thos. H. Hicklin* and *Scott J. Miller* for appellant, Mrs. W. T. Cooper.

TRIMBLE, P. J.—Mary F. Patterson, a widow, died in Davies County, Missouri, on March 17, 1920, leaving

a last will and testament, duly probated in said county, wherein, she gave $1 each to her nephews and nieces, a watch to a friend, Stella Gaines, $500 to a brother, $500 to another friend, Mrs. Cooper, and bequeathed the rest of her estate to Mrs. Cooper and the South Methodist Church of Gallatin as residuary legatees, share and share alike. No mention or reference is made in any way whatever to any child in said will. She had no children except a natural son born to her in 1876 in the State of Indiana when she was a young unmarried woman. Long afterward she moved to Daviess county and married a Mr. Patterson but never had any children by him, and her husband died before she did.

Her illegitimate son is the plaintiff herein who seeks to have himself adjudged her son and sole heir, and asks that the estate she left be, on final settlement and distribution, paid over to him as her sole child and only heir, because, not having mentioned or provided for him in her will, she is deemed to have died intestate as to him.

There is no contest over the facts. Defendants demurred to the petition, and their demurrers are based solely on the proposition that, as plaintiff is an illegitimate child, he is not within the terms of section 514, Revised Statutes 1919, providing that where a testator does not mention nor provide for a child or children or their descendants in his will he shall be deemed to die intestate as to him or them. The trial court overruled the demurrer, whereupon defendants stood thereon. The court then heard the evidence, adjudged that plaintiff was testator's only child and sole heir and that as her will did not mention nor provide for him, she died intestate as to him and he was therefore entitled to receive all of her property.

Our statute of descents and distributions, section 303, Revised Statutes 1919, provides that: "When any person having title to any . . . estate . . . shall die intestate as to such estate, it shall descend and be

distributed . . . *First, to his children* or their descendants in equal parts," etc.

Section 311, Revised Statutes 1919, says: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children, in like manner as if they had been lawfully begotten of her."

Section 514, Revised Statutes, 1919, provides that: "If any person make his last will, and die, leaving a child or children or descendants of such child or children in case of their death, not named or provided for in such will, although born after the making of such will, or the death of the testator, every such testator, so far as shall regard any such child or children, or their descendants, not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part."

It is appellants' contention that the words "child or children" in the above last-quoted statute means and includes only those who are legitimate and does not include those who are illegitimate. The case was submitted without argument and the parties in their briefs have not elaborated their respective positions, but we apprehend that the theory and basis of appellants' contention may be formulated somewhat as follows:

At common law, an illegimate child was *nullius filius*, the child of no one, and had no right of inheritance; and it is well settled that when the law, or a private instrument such as a deed or will, uses the word "child" or "children" without anything to indicate a wider significance, only legitimate child or children is or are meant and included. Since a bastard had no right of inheritance at common law, any statute giving him such a right is in derogation of the common law and must,

therefore, be strictly construed; such a statute will not be extended by implication or construction beyond its express terms. So that when section 311 allows a bastard to *inherit* from its mother, such right is given only where there is an *actual* intestacy of the mother and does not extend to a *statutory* intestacy created by section 514. And said section 514 cannot aid a bastard since it uses only the terms "child" and "children" which, under the above stated rule, means legitimate and not illegitimate child or children.

It 'would seem that respondent's only method of avoiding the force and logic of the foregoing is by asserting the following, which is our formulation of what we conceive to be the theory and basis of his position, namely:

That section 311, giving a bastard the right to inherit from his mother *does not limit that right* to cases where there is an actual intestacy on her part; that said section does not give him a *qualified* right of inheritance from her but a *complete* right; that in this case he is claiming *by inheritance* from her, and, therefore, his right to the property of which she died possessed does not require the term "child" in section 514 to be "enlarged" to include him, for he comes within its terms by virtue of section 311 which makes him his mother's "child" *in law* as he already is *in fact*. In other words, *as to his mother* and the *property of which she dies possessed,* plaintiff is *her child* in every sense of that term and, therefore, comes within its meaning in section 514.

But appellants apparent reply to this would seem to be that section 311 does not make the bastard *legitimate* as to his mother, but merely makes her bastard child *"capable* of inheriting" from her *"as if"* he "had been lawfully begotten;" that this statute permitting him to *inherit* from his mother does not, in order to be confined to cases of intestacy on her part, have to contain an express limitation of that kind; that under the very terms of the right given him as "her bastard child"

to inherit from her, he still remains her *illegitimate* child but with the right of inheritance conferred upon him. In other words, that the terms of the statute mean nothing more and go no further than to allow him to inherit from her whenever, by reason of her intestacy, inheritance is possible; that if she disposes of all of her property by will, there is *no opportunity* for him to inherit; that at common law a parent could dispose of his property by will to whomsoever he would, passing by his children and that too without mentioning them, and for this reason statutes like section 514 were passed so as to guard against the possibility of a legitimate child being overlooked through forgetfulness; so that, were it not for section 514, even a *legitimate* child could take no property where the parent willed it to some one else, although no mention was made of such child in the will; and hence it ought not to be said that plaintiff's right to prevail herein depends solely on section 311 and does not require any enlargement of the word "child" in section 514.

We think the question is not whether section 311 shall be construed broadly or narrowly, but simply whether the terms of section 311, as they stand, are sufficient to bring plaintiff within the term "child" as used in section 514. We readily concede that section 311 does not limit the right of a bastard to *inherit* from his mother, for said section gives him a complete and not a qualified right of inheritance not only from but *through* her as well in the direct as in the collateral line. [Moore v. Moore, 169 Mo. 432, 437, 440-1.] But when the law uses the words "child" or "children" it means legitimate children. [Gates v. Seibert, 157 Mo. 254, 276; 3 R. C. L., pp. 769, 773; 7 C. J. 959; 40 Cyc. 1451.] These are the words section 514 uses; and where is there anything to qualify that meaning? Section 311 merely says: "*Bastards* shall be capable of inheriting . . . on the part of their mother . . . and such mother may inherit from her *bastard* children *as if* they had been law-

fully begotten,'' etc. This does not say they shall be legitimate as to her, but only that her *bastard* children can *inherit* from her. It is not, like section 312 in reference to children born out of wedlock whose parents shall afterwards intermarry, which says "they shall thereby be legitimated." Perhaps the Legislature was "compelled to adopt another phraseology" in dealing with illegitimates in section 311 since it could not well speak of a mother's bastard children being *legitimate* even as to her, but there is a difference in the meaning, and a distinction between the language used in the two sections, as pointed out by Judge VALLIANT's remark in Gates v. Seibert, 157 Mo. 254, 276, where, in commenting upon the Maine Statute in Lyon v. Lyon, 88 Me. 395, he says: "The statute does not in terms or by inference place upon either the seal of legitimacy, but says it may inherit the same as if legitimate whereas our statute says they shall be legitimated." Also in 3 R. C. L., 774, it is said: "Statutes providing for the inheritance of illegitimate children to a greater or less extent, are statutes of descent only, and do not as a rule change the status of the bastard, who is still illegitimate."

Section 303, providing that property shall descend to children, means "legitimate" children and says it shall do so when the owner "shall die intestate." Section 311, in reference to *bastards* and using only the term "bastard children," merely allows them the right of inheritance which legitimate children have in cases of intestacy. And section 514 says if the owner dies leaving a will but does not mention his child or children, or descendants of deceased children, he shall die intestate as to them. The meaning in section 303 is "legitimate" children, and, taking section 514 by itself, the meaning is the same, and there is nothing in the other sections to show that the words "child" and "children" were used in any other sense than their common-law meaning. Manifestly there is nothing in section 311 to show that the words are to be taken in any other sense,

but on the contrary when the latter section uses the word "children" it says "*bastard* children."

It is no doubt well settled, by the weight of authority at least, that statutes such as section 311 gives bastards complete inheritable blood so far as their *mothers* are concerned; and it is held furthermore that such statute should be liberally construed in favor of the class sought to be relieved. Davis v. Rowe, 6 Rand (Va.) 364; Stones v. Keeling, 5 Call (Va.) 143; Bennett v. Toler, 15 Grattan (Va.) 588; Eaton v. Eaton, 88 Conn. 269, 280; Dickinson's Appeal, 42 Conn. 491; Lewis v. Eutsler, 4 Ohio St. 354; Moore v. Moore, 169 Mo. 432.] All of these, however, were cases of *intestacy,* except the two Connecticut cases of Dickinson's Appeal and Eaton v. Eaton, and the case of Bennett v. Toler. In the latter of the two Connecticut cases, the Eaton case, the court say that the fundamental principles of the common law in regard to bastards was never engrafted upon Connecticut law; and in the other Connecticut case, the Dickinson case, the court say that if the question therein were to be decided by the principles of the common law they would dismiss the appeal. In the Eaton case at page 278 it is furthermore said:

"In most if not all the jurisdictions adopting the common-law rules, statutes have been enacted entitling illegitimates to inherit from the mother. This right of inheritance, however, is founded entirely upon the statute and *does not arise from a recognition of the relation of parent and child and her offspring.* The statutes have not changed or undertaken to change the general *attitude* of the law upon the subject of the relations of the parties." (Italics ours.)

The only other case above cited which involves a will, and is not therefore a case of intestacy, is that of Bennett v. Toler wherein a testator willed property to a daughter for life and at her death to her "children." In addition to legitimate children, she had an illegitimate child and the court held the word "children" in testator's will included the illegitimate child. The court made

a number of quotations from Garland v. Harrison, 8 Leigh (Va.) 368, but in the Garland case the court was dealing with a case of intestacy and the question was whether the bastard could inherit *through* the mother. The quotations selected therefrom were entirely applicable to a case of that kind, and it will be noticed that in the Garland case the court, in one of the passages referred to, says of the bastard "he is her legitimate son, *so far as regards his capacity to inherit and transmit inheritance,*" (italics ours), thus carefully limiting the effect of the word "legitimate." The question in the Garland case was whether the bastard could inherit *through* the mother from an intestate, and all the language quoted therefrom was entirely proper in that case. There is other language in the Garland case which was not quoted in the Bennett case, but which may be quoted here, namely (speaking of the statute corresponding to our section 311), "The intention, I admit, was not to legitimate bastards generally, for in that case the Legislature would have used language similar to that contained in the 19th section (corresponding to our section 312); but the object was to make them *quasi*-legitimate on the maternal side; to give the bastard a mother and maternal kindred, and to make them heritable from each other in the order prescribed by the law of descents, as if the bastard had been lawfully begotten of such mother. It places this line, *in respect to inheritance* precisely in the situation it would be in, if one born in lawful wedlock should die leaving no paternal kindred." (Italics ours.) In other words the bastard under section 311 is only "*quasi*-legitimate" as to his mother. This term in legal phraseology indicates "that one subject resembles another, with which it is compared, in certain characteristics, but that there are also intrinsic differences between them." [Black's Law Dict. 977.]

In the Bennett case, the court speaks of the Statute of Descents as being a legislative will which merely seeks to supply the *want* of a will. The Statute of Descents would seem to be merely the policy of the State

as to the devolution of property in cases of intestacy, but if it is a legislative will, it is only such a will as the law deems it *probable* a person *would have made* had he left one. But if the person *leaves* a will, that probability which the law *presumes* in the *absence* of a will does not exist, for he has indicated how he wants his property to go. And he could, by will, give his property to whomsoever he would, regardless even of his legitimate children and that too without mentioning them, were it not for section 514. Hence, unless there is something in said section to show thát the words "child" or "children" have a meaning other and wider than the law ascribes to them, or unless the other statutes are so worded as to bring the illegitimate child or children of the mother clearly within the term used by section 514, we have no warrant or basis to say, by judicial construction, that he and they come within its terms. We must accept the terms of section 514 as the law uses, and our Supreme Court interprets, *them*. As said in Kent v. Barker, 2 Gray (Mass.) 535, 1. c. 537: "As at the common law illegitimate children have no rights of inheritance or descent, whatever they take is by force of the statutes. The statutes have provided for cases of inheritance, for the descent of intestate estates. They have made no provision for cases where there is an omission by a testator to provide in his will for an illegitimate child."

It is true in Massachusetts the statute corresponding to our section 311, for a time, included the words "when she (the mother) shall die intestate;" but prior to the decision the statute had been amended and those words were omitted. Nevertheless, the court held the statute meant the same. There was, the court said, a "slight change of phraseology but none, we think, of substance." The court did give "another suggestion" as being "quite conclusive," namely, that under the last clause of that statute a bastard could not claim by representation through his mother, and, therefore, under the section corresponding to our section 514, if the bas-

tard's contention were to prevail, he could *take* if the ancestor of the deceased mother of an illegitimate child died leaving a will, but could *not* take if the ancestor did not leave one. This additional consideration, however, does not destroy the force of the other ground of the decision. In King v. Thissell, 222 Mass. 140, the court refused to re-examine or disturb the holding in the Kent case.

The case of Estate of Wardell, 57 Cal. 484, 491, is the only case we have been able to find which holds that a pretermitted illegitimate child of its mother was entitled to take the same as a legitimate child, the court saying, at page 491, that the words "child" or "children" relate to *status* and not to *origin* and have "a statutory and not a common-law meaning" and include *all children upon whom has been conferred by law the capacity of inheritance.*" (Italics ours.) Whether the common-law influence is as great in that State as in Massachusetts and in our State, we do not know; that may have had something to do with it. But, however that holding may be under the California jurisprudence, we think that under the wording of our statutes, it is begging the very question at issue to say that the object and purpose of section 514 is to preserve the right of inheritance to *all* children upon whom the law has conferred the capacity of inheritance, and, therefore, includes the mother's bastard child since he can inherit from her. The section does not use any such expression nor any equivalent thereof. It uses the words "a child or children, or descendants of such child or children in case of their death" and the question is, what *kind* of children is it talking about?

Nor can it avail to say that the humane policy of modern sentiment calls for a broader construction of the bastard's rights than formerly. As said in Kent v. Barker, that "is a question for the Legislature and not for the court." Nor is it a matter of visiting the sins of the parent upon the innocent offspring. It is simply a question of what is that offspring's rights under the

cold terms of the law as it is written. He has been given certain rights of inheritance in cases of intestacy. Shall we by construction enlarge those rights and extend them to a broader field? Not unless there is something in the terms of the law to justify such extension. We can find no such justification. Paraphrasing what was said in the case of Kent v. Barker, supra, we may say that if plaintiff's contention herein is to prevail and become the law, then, under the terms of section 514 relating to "descendants" of deceased children, if a mother of illegitimate and legitimate children die, and afterwards her ancestor leaves a will giving property to "her children," the illegitimate child will take along with the rest although the ancestor may never have known of or even suspected its existence; and the same thing would happen if he failed to mention such illegitimate child or to specify the children he did mean.

Our attention is called to the case of Marshall v. Wabash R. Co., 120 Mo. 275, where the word "child" in the "Damage Act" was construed to include a mother's minor illegitimate child. This, however, is with reference to a statute dealing with the *relationship* existing between mother and child and affects only them. The statute under consideration in the case at bar deals with what is meant by the word "child" in the devolution of property under the law, and it vitally affects *others* beside the mother and child and the negligent slayer of the latter. The court in the Marshall case say: "This section does not, it is true, legitimate a bastard, but . . . he has a mother who is recognized as such by our laws. The duty of supporting him rests upon her, and she is entitled to his services during minority." The court then go on to say that "there seems to be no good reason why a statute which speaks of parents and children should not apply to a mother and her illegitimate child; *unless there is something in the statute or subject about which it treats* to show that it was not intended to apply to persons standing in that relation." (Italics ours.) We think this carefully chosen language shows

that what is there said is not to be extended to statutes which deal with a different subject-matter and relate, not to the repair of loss sustained growing out of the re-*lationship* existing between the mother and her illegitimate child, but directs and govern the devolution of property under the law.

The judgment is reversed. All concur.