# CHARLESTON.

Summers County v. Monroe County.

Submitted January 28, 1897—Decided March 27, 1897.

1. County Boundary Disputes—*Circuit Court—Ministerial Duties—Mandamus.*

   The function of a circuit court, under Code 1891, c. 39, s. 18, in appointing commissioners to settle lines between counties, is ministerial, and legislative or administrative, and the court is without power to refuse such appointment on application of a county court of one of the counties. In case of its refusal, *mandamus* from this Court is the remedy, not a writ of error. This Court has no jurisdiction of such writ of error. (p. 209.)

2. Equity Jurisdiction.

   The action of a circuit court in such matters is not the exercise of chancery jurisdiction, and should not be entered in the chancery order book. (p. 210.)

Error to Circuit Court, Greenbrier County.

Petition by the court of Summers county for the appointment of commissioners to determine the boundary between such county and Monroe county. From an order refusing to appoint commissioners, and dismissing the petition, Summers county brings error.

*Dismissed.*

James H. Miller, for plaintiff in error.

John W. Harris, for defendant in error.

Brannon Judge:

The County Court of Summers county passed an order that it appeared to the court that a dispute had arisen between the county of Monroe and the county of Summers as to the boundary line between them, and that a doubt existed as to the location of said line, and ordered that the circuit court be applied to for the appointment of commissioners as provided by statute to have said line settled; and a petition was filed in the circuit court of Summers county, asking it to appoint commissioners, and that court appointed three commissioners for Summers county; and a petition was filed also in the circuit court of Monroe county, asking for the appointment of three commissioners on the part of that county, and the county

court of that county filed an answer to said petition, re-
sisting the application for commissioners; and, the pro-
ceeding having been removed to the circuit court of Green-
brier county, that court refused to appoint commissioners,
and dismissed the petition, and ordered that the decree of
dismissal be entered in the chancery order book of the
court; and then Summers county obtained the present
writ of error.

We must first see whether this Court has jurisdiction to
decide anything further than as to its own jurisdiction
to entertain this writ of error. I remark that a county is
not strictly a corporation, but a public *quasi* corporation.
1 Beach, Pub. Corp. § 8. I doubt whether a county, as
such, can sue in this State, since, under the statute
and Constitution, the county court is its perfect repre-
sentative, performing its functions, and that court is by
statute a corporation; but, as this is not a suit dependent
on legal title, the petition, though filed in the name of the
county, not the county court, will be held as substantially
good in that respect. Coming now to the question of our
jurisdiction, the Code of 1891 (chapter 39 section 18) pro-
vides that, whenever a doubt shall exist or dispute arise as
to the boundary line between any two counties, it shall be
lawful for the circuit court of the counties interested, or
the judge in vacation, to appoint from each of them three
commissioners "to ascertain and establish the true line so
in dispute," and that the commissioners shall choose an
umpire, and they shall take an oath to ascertain the true
line in dispute, and make true reports of the same, and
that they may cause surveying to be done, and take
evidence, and that "when the disputed line shall be ascer-
tained, fixed, and marked," they shall cause to be made
three plats of the line, and return one to the clerk of the
county court of each county, and the other to the secretary
of State, where they shall be recorded, and such plats shall
be evidence of the line. The circuit court heard this case
upon the petition, answer of the county court of Monroe
county, and other papers, just as if it were a lawsuit, decid-
ing apparently upon the merits of the claims of the re-
spective counties in a controverted line, and dismissed the
application of Summers county for the appointment of
commissioners.

The question arises whether the circuit court had any power to thus refuse. I think not, because I think that under that statute a circuit court does but perform a purely ministerial, not a judicial, function, nor one of discretion. When the county court of a county certifies, in the language of the statute, that a doubt or dispute exists as to such boundary line, it is entitled to have the question decided by the only power known to our laws to so decide it,—the special commission provided by the statute. The merits of the controversy as to the line go before that commission. It cannot be that the court may or may not, as it chooses, appoint such a commission, because the statute says it shall be lawful to do so, thereby, as claimed, giving the court a discretion to do or not to do what it is directed to do. It is a remedy provided for the benefit of the dissatisfied county, and the statute, in saying that it shall be lawful for the court to appoint commissioners, means that it shall be its duty when the state of facts exists pointed out by the statute. A circuit court does not try the merits of the controversy. It simply opens the way for a trial of them before the special tribunal created by the statute. That tribunal does not report to the circuit court its work, for the court's approval, but it goes to the clerks and the secretary of state, and there is no further action contemplated on it. That commission, not the court, hears the controversy. Those commissioners, in the very language of the statute, ascertain, fix, and mark the disputed line. It is not a lawsuit between the counties. It is simply a process pointed out by statute, by which the line fixed by the legislature in the formation of the county shall be ascertained and made certain. Whether the action of that special tribunal can be controlled by a court is not now for us to say. The fact that a court acts in the appointment of this commission does not make its action any the less ministerial. *Mackin* v. *Taylor County Court*, 38 W. Va. 345 (18 S. E. 632); *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264. It is the character of the act, not the tribunal doing it, which gives cast to that act. The action of the circuit court being ministerial merely, no writ of error or appeal lies to this Court therefrom. 2 Enc. Pl. & Prac. 25, 26. This Court's appellate jurisdiction is in matters judicial, not merely min-

isterial. *Mandamus* was the proper proceeding to compel the appointment of commissioners by the circuit court. *Doolittle* v. *County Court*, 28 W. Va. 158; *Randolph* v. *Stalnaker*, 13 Grat. 523. There is another reason why this court has no jurisdiction, and that is that the action of the circuit court in this matter is legislative, or, rather, administrative of a legislative power or function, not judicial action, because the formation of counties, and the fixing and altering of their boundaries, is purely a legislative function. The legislature can delegate that power to subordinate agencies. *Roby* v. *Sheppard*, 42 W. Va. 286 (26 S. E. 278); 1 Beach, Pub. Corp. §§ 397, 399. The legislature has delegated its function in settling boundary lines, and given a part of it to the circuit court, in the appointment of commissioners, and the balance to those commissioners. Such being the character of its action, no writ of error or appeal lies to this court, because the functions of this court are purely judicial, as above stated. *In re Town of Union Mines*, 39 W. Va. 179 (19 S. E. 398); *Mackin* v. *Taylor County Court*, 38 W. Va. 338, (18 S. E. 632); *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264. As above stated, it must not be thought, because a circuit court is directed to appoint commissioners, an appeal lies from its action. Congress, for instance, directed a district court to pass on certain claims, and report to the secretary of the treasury. It was held that no appeal lay from that court to the supreme court. *U. S.* v. *Ferreira*, 13 How. 40. We have therefore no jurisdiction to decide upon the merits of the case as presented to the circuit court of Greenbrier county, and will therefore dismiss this writ of error as improvidently granted.

I will remark that this proceeding in the circuit court is in nature a law proceeding, to be entered in the law order book. It has no features to give it place as a chancery suit, and ought not to be recorded in the chancery order book. That book contains only matters purely of chancery jurisdiction. All other matters which a circuit court does are to find their place of record in the common-law order book of that court. Its entry by the court in the chancery order book would itself be reversible error, if we had jurisdiction. *State* v. *Irwin*, 30 W. Va. 421, (4 S. E. 413.)

*Dismissed.*