# CHARLESTON.

### BAKER et al. v. O'BRIEN.

Submitted October 11, 1916.   Decided October 24, 1916.

1. PROHIBITION—*County Court—Nature of Decision.*

   The function performed by a county court, in ordering an election on a petition for relocation of the county seat, is purely ministerial.   (p. 101).

2. SAME—*Subject of Relief—Ministerial Acts.*

   Even though acting beyond its authority, in the performance of a mere ministerial act, prohibition does not lie to restrain a county court from performance of such an act.   (p. 102).

3. SAME.

   The power conferred upon circuit courts, by sec. 45, ch. 39, Code, by the writ of prohibition, to prevent county courts from exercising jurisdiction or authority not conferred upon them by law, does not extend to ministerial acts of county courts.   .(p: 102).

(MASON, JUDGE, absent).

Original petition by C. E. Baker and others for prohibition to Hon. W. H. O'Brien, as County Judge, and others.

*Writ Awarded.*

*Geo. F. Cunningham* and *Pendleton, Mathews. & Bell,* for petitioners.

*Stone & Wolfe,* for respondents.

POFFENBARGER, JUDGE:

The inquiry raised by this application for a writ of prohibition to restrain a judge of a circuit court, from proceeding upon a rule in prohibition issued by him, is whether prohibition lies from the circuit court of a county, to prevent the county court thereof from ordering an election, on a petition deemed by it to be sufficient, to determine the will of the voters of the county, upon the question of relocation of the county seat thereof.

The function performed by a county court, in calling such an election, is a purely ministerial one.   *Doolittle* v. *County*

*Court,* 28 W. Va. 158. Under the common law, prohibition goes only against judicial action or quasi-judicial action. *Campbell* v. *Doolittle,* 50 W. Va. 317; *Hartigan* v. *Board of Regents,* 49 W. Va. 14; *Hassinger* v. *Holt,* 47 W. Va. 348; *Fleming* v. *Commissioners,* 31 W. Va. 609; *Brazie* v. *Commissioners,* 25 W. Va. 213.

A statute, sec. 45, ch. 39, Code, giving the remedy against county courts in very broad terms, reads: "The circuit court of any county may, by writ of prohibition, prevent the county court of such county from exercising any jurisdiction or authority which is not conferred on it by law or necessary and proper for carrying into execution the power so conferred; and may, by a writ of mandamus, enforce the performance of any legal surety of such court." Though passed in 1873 and operative since that date, this statute has never before been relied upon or invoked as authority for jurisdiction in a circuit court to restrain ministerial action of a county court, by the writ of prohibition. At that date, as well as now, some judicial power was vested in county courts, and it may have been the legislative purpose to subject them to the writ of prohibition only so far as to confine them within the limits of their judicial power. Notwithstanding the broad terms of the statute, this court held in *Williamson* v. *County Court,* 56 W. Va. 38, that the appointment of election commissioners by a county court, was an administrative or ministerial act and, therefore, could not be interfered with by the writ of prohibition. In *Fleming* v. *Commissioners,* 31 W. Va. 609, prohibition was declared to be a remedy applicable only to the unlawful exercise of a judicial function, and mere ministerial, administrative or executive acts not to be within its province. While the statute was not adverted to in these decisions and others affirming the proposition, it cannot well be supposed that its existence was unknown, and it may well be assumed that the court did not regard the general terms of the provision as signifying any intention to innovate upon established and rather fundamental principles of government, to the extent of authorizing courts to interfere with ministerial functions. Such power is not given in specific language. The circuit courts are empowered by writ of prohibition to pre-

vent the exercise of jurisdiction or authority not conferred upon county courts by law. As to whether it was the legislative intention to include ministerial acts of such bodies, the language of the statute is silent. In other words, it does not define jurisdiction, for its purposes, and as applied to courts, the words used import judicial power only. *Maurer* v. *Mitchell*, 53 Cal. 291, 293.

If the court narrowed the operation of the statute, in view of the generality of its terms, as it seems clearly to have done, the construction adopted harmonizes with a rule very generally recognized. "Statutes are sometimes extended to cases not within the letter of them; and cases are sometimes excluded from the operation of the statute, though within the letter; on the principle that what is within the intention of the makers of the statute is within the statute, though not within the letter; and that what is not within the intention of the makers is not within the statute; it being an acknowledged rule in the construction of statutes, that the intention of the makers ought to be regarded." *Brown* v. *Gates*, 16 W. Va. 131. Matters falling within the general terms of a statute are frequently excluded from the operation thereof, to avoid innovation upon settled principles of public policy or general systems of law, which it is presumed the legislature did not intend to disturb, in the absence of terms specifically expressing intention to do so. *Brown* v. *Gates,* cited, *Reeves* v. *Ross,* 62 W. Va. 7; *Conley & Avis* v. *Coal & Coke Ry. Co.,* 67 W. Va. 129.

It would be difficult to name a principle more generally recognized or undeviatingly adhered to, than the one this statute would break in upon, if given the effect its terms literally import. Very few of the states have passed statutes encroaching upon it. In Idaho, it seems to have been deemed necessary to find in the constitution warrant of legislative power validly to extend the remedy to purely ministerial officers and acts. *Williamson* v. *Lewis*, 54 Pac. R. 619. In other courts, as well as this, the rule seems to be regarded as fundamental and almost, if not quite, organic. Spelling, Ex. Rem. secs. 1718, 1722; 32 Cyc. 602; 16 Ency. Pl. Pr. 1102.

At the present term of this court, the co-respondents of

the judge were denied right of review of the action of the county court in the same matter, by writ of ceritorari. They insist that the law ought to afford them a remedy of some kind, for the alleged irregularities in procedure of which they complain. It must be remembered, however, that the location and re-location of county seats is primarily and strictly a legislative function. In its delegation of the power of re-location to the people, subject to the limitation imposed by sec. 15, ch. 39, of the Code, the legislature was under no duty to provide a remedy for restraint or review of the action of county courts, in the exercise thereof, In view of the incident delay and confusion, it may have been unwise to confer such right. In some of the western states, embarrassment from this source became so acute as to lead the courts to limit the right of review to very narrow bounds. *Herrick* v. *Carpenter,* 54 Ia. 340. If three-fifths of the legal voters of a county desire a re-location of the county seat and so express themselves in an election called to determine the question, they are legally entitled to it. Any loss any individual or community may suffer from it is *damnum absque injuria,* and the election involves practically no public expense, for, if held in a year in which there is a general election, the ballot is taken in it, and, if held in a year in which there is none, the petitioners are required to pay the expenses of the election.

Upon the principles and conclusions here stated, the writ of prohibition prayed for will be awarded.

*Writ Awarded.*