H. W. WISEMAN, *et al.*

*v.*

CARL CALVERT, *et al.*

(No. 10235)

Submitted January 11, 1950.   Decided April 4, 1950.

GIVEN, JUDGE, dissenting.

*Spilman, Thomas & Battle, Robert H. C. Kay, Frank T. Litton, Harold H. Neff, Howard R. Klostermeyer,* for petitioners.

*Charles P. McCabe, McCabe & McCabe,* for defendants.

HAYMOND, JUDGE:

This original proceeding in prohibition involves the power and the authority of the County Court of Kanawha County to issue a certificate of incorporation to a municipality to be known as the City of Belle, comprising an area slightly in excess of one square mile and containing approximately 2353 to 2500 residents, in Malden District of that county. The individual petitioners, H. W. Wiseman, M. F. Burgess, James M. Elliott, G. C. Fauber, Jr., Mayme Elliott and H. E. Shock, residents and qualified voters of the western portion of the area, in behalf of themselves and numerous other adult residents of that part of the area, and the corporate petitioners, Auto-Park Theatre, Inc., Belle Alkali Company, E. I. du Pont de Nemours and Company, Givaudan-Virginia, Inc., New York Central Railroad Company and Toledo and Ohio Central Railway Company, the owners and the operators, or the operators, of various large tracts of land devoted

to industrial, railroad or business uses in a large portion of the territory in the central section of the area, seek a writ from this Court to prohibit the defendants, Carl Calvert, Mont Cavender and J. M. Slack, Jr., commissioners of the county court and all representatives appointed or authorized by that court to act for it in connection with the incorporation of the proposed municipality, and R. Dayle Fidler, F. H. Givens, B. S. Smithers, Elijah Peck, H. L. Fletcher, Nancy B. Martin, Frances Perine, Hector Frame, Albert Garten, Ira Thompson, James B. Smithers, Margaret Rotenberry, Pauline Gray, Hoyt Hunter and W. A. Seacrist, the petitioners for a certificate of incorporation for the proposed City of Belle, filed on October 17, 1949, in the county court in a proceeding for that purpose which is now pending and undetermined, from taking any further action in such proceeding other than to dismiss it.

Upon the filing of the verified petition for a writ of prohibition this Court, on December 5, 1949, awarded a rule returnable January 11, 1950. On that day the defendants R. Dayle Fidler and the other petitioners in the proceeding before the county court filed their written demurrer and their joint and several answer, duly verified, and upon these pleadings and the briefs and the oral arguments in behalf of the petitioners and the answering defendants, respectively, this proceeding was submitted for decision.

The proceeding to incorporate the municipality was instituted in the county court under Chapter 83, Acts of the Legislature of West Virginia, 1949, Regular Session, which amended and reenacted Article 2, Chapter 8, Code, 1931, the substance of which, as Chapter 47 of earlier codes, was in force and effect in this State for many years. In so far as they relate to the questions presented in this proceeding, the principal amendments to the prior statute, Article 2, Chapter 8, Code, 1931, effected by the present act, vested the authority to issue a certificate of incorporation, which former statutes conferred upon the circuit court, in the county court of the county in which the territory involved

is located. The proceeding was matured for hearing in the manner provided by Sections 3 and 4 of Chapter 83 of the Acts of 1949 and, at the hearing on October 17, 1949, Wiseman and the other individual petitioners and the corporate petitioners, in this proceeding, appeared and opposed the incorporation on substantially the same grounds on which they seek the writ of prohibition in this Court. They either demurred to or answered the petition in the county court, challenged its sufficiency under the statute, attacked the constitutionality of the statute, and denied the right of the county court, because of the character and the relative locations of the various sections of the area, the different uses to which they are devoted, and the number and the territorial distribution of the residents within the proposed boundaries, to issue a certificate of incorporation for the territory as a municipality. They also filed, in the form of petitions alleged to contain the signatures of a large number of adult residents of each of the eastern and western sections of the area, the protests of a large number of persons against the incorporation of these sections in the proposed municipality.

The county court overruled all objections to the incorporation and granted the prayer of the petition to incorporate and, by order entered November 18, 1949, found and provided that the amount of territory proposed to be incorporated as shown by the map and the survey filed with the petition, was not disproportionate to the number of its residents; that the map and the survey accurately showed and described the territory to be incorporated; that they were subject to examination in the manner and for the time prescribed by law; that the boundaries of the territory were correctly shown by courses and distances indicated on the map; and that the requirements of Chapter 83 of the Acts of the Legislature, 1949, Regular Session, had been complied with in all respects. The county court further ordered that a census be taken on December 16, 1949, and that an election be held on January 17, 1950, established four voting places within the territory to be incorporated, and appointed various persons to take the census, to register the qualified voters, and to act

as commissioners and clerks to conduct the election. The court also provided that no census should be taken and no election should be held until a bond for costs should be given by the petitioners seeking incorporation, which bond has been entered into by them.

Other than a disagreement between the parties to this proceeding concerning the accuracy of the map and the survey, and the size of the area involved, which the petitioners in this Court allege is 675 acres and the answering defendants aver is 703 acres, the material facts, as disclosed by the pleadings, bearing upon the character of the territory to be incorporated, the use to which the lands within it are devoted, and the number and the distribution of the residents in the different sections within the proposed boundaries, are not disputed. In consequence only questions of law are presented.

The territory sought to be incorporated as the City of Belle is designated as "Belle, unincorporated" on road signs placed by the State Road Commission at the east and west boundaries of the area along U. S. Route 60 which extends generally east and west through it. Within the territory, which is approximately one-fourth of a mile in width from north to south, and slightly over three miles in length, from east to west, are three individual sections. One of these, sometimes referred to as "East Belle", in the easterly portion, contains approximately 303 acres of hill and bottom land with 507 residences and 1933 inhabitants; another, sometimes referred to as "West Belle", in the westerly portion, contains approximately 157 acres of hill and bottom land, with 110 residences and 420 inhabitants; and the third, in the central portion, contains approximately 215 acres of hill and bottom land. This central portion is used or held for industrial purposes and in it are located large plants of the corporate petitioners Belle Alkali Company and E. I. du Pont de Nemours and Company. There are no residences and no regular inhabitants in this industrial area. The hill land in the entire territory is situated on its northern side and is to the north of U. S. Route 60 and the

line of railroad operated by the corporate petitioner, New York Central Railway Company, which extends through the area and runs approximately parallel with the highway. The hill land is steep, largely undeveloped, and now contains no streets or building lots. The assessed valuation of the property in the entire territory is about $8,000,-000 which, if included in the proposed municipality and subjected to the maximum rates of levy, would produce municipal revenue in direct property taxes of approximately $38,000.00 annually which by special levy could be increased to approximately $49,000.00 annually and, by the action of the voters of the municipality, further increased to approximately $58,000.00 annually, of which taxes the owners of the property devoted to industry, public utilities, and business would be required to contribute approximately 90.8 per cent.

Upon the foregoing material facts, and other incidental facts which need not be stated, the petitioners and the answering defendants base conflicting contentions.

The petitioners contend that even if the county court is vested with constitutional power and authority under Chapter 83, Acts of the Legislature, 1949, Regular Session, to issue a certificate of incorporation to the proposed municipality in the proceeding now pending before it, which they vigorously challenge and deny, that court may not validly do so for these reasons: (1) The survey and the map used in the proceeding to incorporate are not accurate and do not satisfy the requirements of the statute; (2) the territory sought to be incorporated is disproportionate to its population; (3) the area involved includes territory which can not be benefited by the incorporation and property within such territory will be subjected to burdensome and unnecessary municipal taxes; and (4) the territory proposed to be incorporated includes two separate and distinct residential areas which are not contiguous and may not be embraced within the same municipality.

The answering defendants, by their demurrer and their answer, deny these contentions of the petitioners and

urgently insist that the survey and the map are accurate; that the territory is not disproportionate to its population; that all the territory involved and all the property within it will be benefited by the proposed incorporation of the municipality and not subjected to unreasonable or unnecessary taxes; and that the territory proposed to be incorporated does not consist of separate or distinct areas but constitutes a single, compact area which now functions as the unincorporated community of Belle.

The petitioners attack the constitutionality of the statute, Chapter 83, Acts of the Legislature, 1949, Regular Session, generally and in its application to the proposed incorporation, on these grounds: (1) As violative of Section 24, Article VIII of the Constitution of West Virginia in that it undertakes to confer judicial power and impose judicial duties upon the county court; (2) as violative of Section 39 (a), Article VI of the Constitution of West Virginia, in that it denies the electors within a territory having a population in excess of two thousand of power and authority to frame, adopt and amend its municipal charter; (3) as void because of indefiniteness; (4) as violative of Article III of the Constitution of West Virginia in undertaking to vest legislative powers in private citizens; and (5) as violative of the Fifth and Fourteenth Amendments to the Constitution of the United States and Sections 9 and 10, Article III of the Constitution of West Virginia, in so far as the statute applies to 372 acres of territory devoted chiefly to industrial use within the area proposed to be incorporated.

The first two constitutional issues, being specifically presented and directly involved, will be separately dealt with and resolved.

For a period of many years, from the enactment of the Code of 1868 until the amendment of Article 2, Chapter 8 of the Code of 1931, by Chapter 83, Acts of the Legislature, 1949, Regular Session, the general statute dealing with towns and villages in this State conferred upon the circuit court of the county in which the territory to be incorpo-

rated was located the power to direct the clerk of such court "to issue a certificate of incorporation of such town or village" in form or substance as provided by the statute. See Section 9, Chapter 47, Code, 1868. From 1868 until the statute was amended in 1901, it provided that, upon the filing of the requisite certificate of the result of the vote of a majority of the qualified voters within the bounds of the territory to be incorporated and upon satisfactory proof that certain requirements of the statute had been complied with, "the circuit court shall, by order entered of record, direct the clerk of said court" to issue a certificate of incorporation in the form set forth in the statute. After its amendment in 1901, until the enactment of Chapter 83, Acts of the Legislature, 1949, Regular Session, the statute provided that "the circuit court may, at its discretion by order entered of record, direct the clerk of said court to issue" the certificate of incorporation. See Section 9, Chapter 41, Acts of the Legislature, 1901, Regular Session.

During the time the provision in its original or in its amended form remained in force, and before it was again amended in 1949, this Court was called upon, in several cases, to determine its validity within the meaning of Article V of the Constitution of this State in vesting in the circuit court the power to issue a certificate of incorporation of a municipality. The first of the cases which involved the constitutionality of the statute was *In re Town of Union Mines,* 39 W. Va. 179, 19 S. E. 398, which was followed in succession by the cases of *Elder* v. *Incorporators of Central City,* 40 W. Va. 222, 21 S. E. 738; *Bloxton* v. *McWhorter, Judge,* 46 W. Va. 32, 32 S. E. 1004; *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715; *St. Marys* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164; *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872; *Baker* v. *Workman,* 72 W. Va. 518, 78 S. E. 670; and *West* v. *The West Virginia Fair Association,* 97 W. Va. 10, 125 S. E. 353. In all those decisions the constitutionality of the statute was directly upheld or impliedly recognized. In dealing with the nature of the functions conferred upon the cir-

cuit court and discharged by it in issuing a certificate of incorporation to a municipality of less than two thousand inhabitants and in determining whether it was judicial or legislative and administrative, the language used is at times conflicting and confusing.

In *In re Town of Union Mines,* 39 W. Va. 179, 19 S. E. 398, the function is referred to as "judicial and administrative" and the statement is that in discharging this function the circuit court does not act "under the judicial branch of the government" but "as a part of the legislative branch of government", and that its action in discharging "legislative judicial functions can not be reviewed by this Court by a writ of error or other ordinary appellate writ notwithstanding their judicial character." In *Elder* v. *Incorporators of Central City,* 40 W. Va. 222, 21 S. E. 738, it was held that the statute, in so far as it conferred on the circuit court functions "in their nature judicial and administrative, although in furtherance of the power of the legislative department of the state government" was constitutional and valid. In the opinion in that case this Court said that the circuit court in ascertaining and determining whether the requisite facts which existed in a particular instance discharged "at least, an administrative or *quasi* judicial function" which it may be authorized to perform. In *Bloxton* v. *McWhorter, Judge,* 46 W. Va. 32, 32 S. E. 1004, a proceeding in prohibition, it is said that the circuit court, by the statute, was given a special and exclusive jurisdiction which was partly legislative and partly judicial and administrative; that in deciding that the required proofs were satisfactory it was exercising its legitimate judicial functions and that, in entering the order to direct the issuance of the certificate of incorporation, it was performing merely a ministerial duty. In *State* v. *Harden,* 62 W .Va. 313, 58 S. E. 715, in referring to the cases of *In re Town of Union Mines and Elder* v. *Incorporators of Central City,* the opinion says: *"In Re Town of Union Mines,* 39 W. Va. 179, the Court held as follows: 'Chapter 47 of the Code, in relation to the incorporation of cities, towns, and villages, in so far as it

confers on the circuit court functions in their nature judicial and administrative, although in furtherance of the legislative department of the state government, is constitutional and valid.' The same declaration has been made in exactly the same language in *Elder* v. *The Incorporators of Central City,* 40 W. Va. 222. In both of these cases, this Court declined appellate jurisdiction over proceedings in the circuit courts for the incorporation of cities, towns and villages, under the provision of chapter 47 of the Code, on the theory and express holding that the action of the circuit court was only *quasi* judicial, or that, if it was not *quasi* judicial, it was an administrative function, the conference of which upon circuit courts was expressly authorized by the Constitution." In *St. Marys* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164, the statement in the opinion is that a circuit court, under the statute, in incorporating a municipality, "acts in a judicial and administrative capacity." In *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872, and *Baker* v. *Workman,* 72 W. Va. 518, 78 S. E. 670, the holdings were that the statute did not contravene Article V of the Constitution, which requires the legislative, executive and judicial departments to be kept separate and distinct and forbids the exercise of the powers of more than one of them at the same time by any person except justices of the peace, and that the discretion vested in the circuit court is administrative and judicial and not legislative.

In *West* v. *The West Virginia Fair Association,* 97 W. Va. 10, 125 S. E. 353, this Court held that in directing the clerk of the circuit court to issue a certificate of incorporation and in determining that the provisions of the statute relative to the formation of a municipality have been complied with, the circuit court acts as an agency of or tribunal representing the Legislature, and that its findings and order are not subject to review by this Court unless plainly arbitrary or capricious. In that case a writ of error was granted by this Court to the order of the circuit court incorporating the municipality of Nutter Fort in Harrison County and upon a hearing this Court affirmed

the order which directed the issuance of the charter. The opinion contains this statement: "The circuit court sits as an agency of the legislature to determine whether or not certain preliminary requirements have been met, exercising a function in its nature judicial, but not as a part of the judicial system of the state in which appeals and writs of error are provided for. The functions of the circuit court are somewhat of the nature of those exercised by it where a property owner appeals to the circuit court from an assessment of his property made by the board of public works, for purposes of taxation. The court hears the evidence offered on behalf of the taxpayer and on behalf of the state, or any political division thereof interested, and from that evidence determines the value of the property for assessment purposes. Necessarily in deciding upon conflicting evidence the court exercises judgment; but that judgment is merely administrative and not judicial; its judgment is distinct from that belonging to it as a court or as a judicial tribunal. The court acts as an appellate tax tribunal." This further statement also appears in the opinion: "On the question of the power of the courts to review proceedings for the formation of municipalities, it is quite generally held that the incorporation is not a judicial but a ministerial proceeding, and a court conducting the proceedings under legislative authority exercises the special ministerial functions conferred by the legislature, rather than the judicial powers derived from the constitution and general laws, and a proceeding for incorporation or the order or decree therein is subject to review on appeal, writ of error or otherwise only when, and in the manner, especially provided by law."

In the recent case of *In re Proposal to Incorporate the Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113, the question of the constitutionality of the statute, Section 8, Article 2, Chapter 8, Code, 1931, was again presented to this Court. It was urged that the section violated Article V of the Constitution by conferring a purely legislative function upon the circuit court with respect to the in-

corporation of a municipality under the provisions of Article 2 of that chapter of the Code of 1931. In that case this Court sustained the constitutionality of the statute and, though expressing disagreement with some of the former decisions in so far as they recognize the function exercised by the circuit court in the incorporation of a municipality to be judicial in its nature, reaffirmed them on grounds of public policy. In the opinion the cases of *In re Town of Union Mines,* 39 W. Va. 179, 19 S. E. 398; *Elder* v. *Incorporators of Central City,* 40 W. Va. 222, 21 S. E. 738; *Bloxton* v. *McWhorter, Judge,* 46 W. Va. 32, 32 S. E. 1004; *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715; and *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872, are cited and discussed.

In referring to these cases the opinion in the *Town of Chesapeake* case uses this language:

"It cannot be doubted that the cases cited and discussed above clearly sustain the power of circuit courts to grant certificates of incorporation to towns with a population of less than two thousand. The first of those decisions was in the year 1894, the last in 1912, so that, for more than fifty years, such power in circuit courts has been recognized. We are now asked to change the rule thus announced on the ground that in certain cases decided by this Court in recent years, we have more strictly interpreted the requirements of Article V of the Constitution of this State as preventing the Legislature from conferring upon courts powers not in their nature judicial. The new and strict rule was first announced in *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 159 S. E. 834. There a commission was established to pass upon applications for licenses to construct water power dams in the rivers of this State. The act made the governor a member of the Public Service Commission, for the purpose of passing upon such applications, then provided for an appeal from rulings of the commission to the Circuit Court of Kanawha County and an appeal to this Court. This act was held unconstitutional on the ground that 'The Legislature cannot commit to the judiciary powers which are

primarily legislative,' and Article V of the Constitution was applied. In *Sims* v. *Fisher*, 125 W. Va. 513, 25 S. E. 2d 216, it was held that 'Article 4, Chapter 117, Acts of the Legislature, 1941, relating to the sale of lands for the benefit of the school fund, so far as it attempts to require of circuit courts, and this Court, the performance of administrative and non-judicial functions is unconstitutional.' This case had to do with the sale of delinquent and forfeited lands in a proceeding clearly designated by the act as administrative. In *State* v. *Huber, supra,* the Legislature attempted to confer upon circuit courts the power to pass upon the revocation of licenses for the sale of nonintoxicating beer, and the sections of the act conferring such power were declared to be unconstitutional, under the provisions of Article V of the Constitution. It is unnecessary to discuss here the reasoning upon which these cases are based.

"We will not attempt to reconcile the decisions pertaining to the incorporation of towns by circuit courts with the opinions expressed in the cases last cited above. We think that, in their reasoning, they are in sharp conflict, and, in our opinion, had the principle of the *Hodges* case been applied to the case of *In re Town of Union Mines, supra,* a different decision would have been made."

After the decision in the case of *In re Proposal to Incorporate the Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113, and presumably to make the statute conform to the principles expressed in the opinion respecting the nature of the power exercised by the circuit court in connection with the incorporation of municipalities, the Legislature amended the statute then incorporated in the Code of 1931 as Article 2 of Chapter 8, and conferred the power formerly vested in the circuit court upon the county court and, by a new section, expressly provided for an appeal from the final order of the county court to the circuit court. Chapter 83, Acts of the Legislature, 1949, Regular Session.

In harmony with the view indicated and the reasons expressed in the *Town of Chesapeake* case, and the quoted

pronouncements in the opinion in the case of *West* v. *The West Virginia Fair Association*, 97 W. Va. 10, 125 S. E. 353, the conclusion now reached by this Court is that the power conferred and the duties imposed upon the county court, and the function vested in it by Chapter 83, Acts of the Legislature, 1949, Regular Session, with relation to the incorporation of municipalities, are essentially legislative, not judicial, in their nature.

Subject to constitutional limitations the incorporation of a municipality is purely a legislative function. *St. Marys* v. *Wood, Judge*, 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164; *South Morgantown* v. *Morgantown*, 49 W. Va. 729, 40 S. E. 15; and a municipality derives all its power as well as its existence from the Legislature. *Booten* v. *Pinson*, 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244; *Roby* v. *Sheppard*, 42 W. Va. 286, 26 S. E. 278. It is the creature of the Legislature and it has neither existence nor power apart from its creator. 37 Am. Jur., Municipal Corporations, Section 4. In *Booten* v. *Pinson*, 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244, this Court says: "Municipalities are but political subdivisions of the state, created by the legislature for the purpose of governmental convenience, deriving not only some, but all of their powers from the legislature. They are mere creatures of the legislature, exercising certain delegated governmental functions which the legislature may revoke at will." As stated in *West* v. *The West Virginia Fair Association*, 97 W. Va. 10, 125 S. E. 353, "It is very generally held that the legislative department of the government cannot delegate its power of legislation to either of the other coordinate branches of the government, but it may delegate the power to determine some fact or state of things upon which it will make its own action or grant depend. The power to create municipalities cannot be delegated, but the legislature may confer upon a court or some administrative officer or board the power to perform some judicial or ministerial act in the formation of such public corporations; or to ascertain and determine whether the conditions prescribed by the statute as to the forma-

tion of corporations and the granting of the charter has properly come into existence."

That the exercise of the power conferred should require the tribunal to hear evidence and to use judgment in deciding whether the statutory requirements for the formation of a municipality have been met does not mean that such power is judicial. *State* v. *Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A. L. R. 808. In the opinion in that case this Court said: "We know, as a matter of everyday observation, that the agencies of the legislative department of our Government, such as the public service commission, the road commission, the compensation commissioner, the unemployment compensation commissioner, and many other boards and regulatory bodies affecting the professions and particular occupations, have constantly submitted to them matters upon which they take evidence, attempt to apply the law, make decisions, sometimes of vast importance, and of importance equal to matters determined by this Court. If their acts are judicial acts, and constitute the exercise of judicial power, then these legislative agencies have no right to exercise such power, for, being judicial in nature, as contended, their exercise belongs exclusively to the courts. The extension of the argument to its logical conclusion destroys it." In discussing the case of *Arkle* v. *Board of Commissioners,* 41 W. Va. 471, 23 S. E. 804, in which it was held that county courts, under Article VIII, Section 24, of the Constitution, did not possess the judicial power to remove county-district officers, this Court also uses this language in the *Huber* case: "This Court, while approving the result in the *Arkle* case on the facts there present, finds itself unable to agree that the mere taking of testimony, the ascertainment of facts, and the law necessary to the decision of a controversy, renders that decision the exercise of judicial power, in cases where, under the Constitution, the subject of the inquiry is one which is within the jurisdiction either of the legislative or executive department of the State Government." Furthermore, the vesting of discretion in the exercise of a power or a

function does not render such power or such function judicial in its nature. "That the exercise of discretion enters into it, does not make it judicial. There is judicial and non-judicial, or legislative and executive, discretion." *Campbell* v. *Doolittle*, 58 W. Va. 317, 52 S. E. 260.

As already pointed out, the incorporation of municipalities is within the exclusive power of the legislative branch of the government of this State. The power conferred by Chapter 83, Acts of the Legislature, 1949, Regular Session, upon the county court to direct its clerk to issue a certificate of incorporation to a municipality and to determine that the provisions of the statute relative to the formation of such municipality have been complied with is not judicial in nature and, in exercising that power, the county court acts as an agency of or a tribunal representing the Legislature. Under Article VIII, Section 24, of the Constitution, the judicial power of county courts is limited to specified subjects, among which are mentioned all matters of probate, personal representatives, guardians, committees, curators, the settlement of their accounts, matter relating to apprentices, *Haudenschilt* v. *Haudenschilt*, 129 W. Va. 92, 39 S. E. 2d 328; *Gapp* v. *Gapp*, 126 W. Va. 874, 30 S. E. 2d 530; *Boone* v. *Boone*, 123 W. Va. 696, 17 S. E. 2d 790; *State ex rel. Nutter* v. *Mace*, 130 W. Va. 676, 44 S. E. 2d 851, and election contests involving county and district officers, *State ex rel. Daugherty* v. *County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321; but in addition to that power, county courts "may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law." The power conferred upon the county courts by Chapter 83, Acts of the Legislature, 1949, Regular Session, is in its nature not judicial or quasi judicial but legislative, or administrative of a legislative, power or function and, as a county court, in exercising such power, acts "as an agency of the Legislature to determine whether or not certain preliminary requirements have been met", the present statute which authorizes the county courts so to do, is not

violative of Article V or of Article VIII, Section 24, of the Constitution, but is valid and constitutional.

As indicated in the opinion of this Court in the case of *In re Proposal to Incorporate the Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113, "the confusion of thought" there referred to resulted, to some extent, from the consideration given to, and the endeavor to determine, the question of appellate review of the action of the circuit court in a proceeding to incorporate municipalities under general law. The right to judicial review of a final order in such a proceeding, by writ of error, independently of any statute conferring it, was recognized by this Court before the enactment in 1949 of the present statute. *In re Proposal to Incorporate the Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113; *West* v. *The West Virginia Fair Association,* 97 W. Va. 10, 125 S. E. 353. Section 17, Article 2, Chapter 83, Acts of the Legislature, 1949, Regular Session, now provides for an appeal to the circuit court from the final order of the county court. Though it appears that decisions which recognize the practice of permitting appeals from and writs of error to orders of administrative tribunals have proceeded on the theory that such agencies exercise what is termed "quasi judicial" power, that principle does not overlook or destroy the valid distinction between "quasi judicial" power and power judicial in its nature, which is judicial power in its real and proper sense and meaning. As stated in the opinion in *State* v. *Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A. L. R. 808, there is a recognized distinction between "judicial power" and "quasi judicial" power. The one is power which in its nature is judicial; the other, whatever its meaning, is not judicial power in its real and proper sense. The prefix "quasi" means "as if; as though; as it were; in a manner; in a certain sense or degree; having some resemblance to; seeming; seemingly". Webster's New International Dictionary, Second Edition, Unabridged, G. & C. Merriam Co., page 2035; Black's Law Dictionary, Third Edition, page 1478. Its use or meaning is indicated in this quotation from Black's Law Dictionary, Third Edition, at page

1478: "This term is used in legal phraseology to indicate that one subject resembles another, with which it is compared, in certain characteristics, but that there are also intrinsic differences between them. *Baker* v. *Stucker,* 213 Mo. App. 245, 248 S. W. 1003, 1006."

That which resembles another subject can not be that other subject. The distinction between "a quasi judicial act" and "a judicial act proper" is discussed in the opinion in the case of *State* v. *South Penn Oil Company,* 42 W. Va. 80, 24 S. E. 688, in this language: "Many acts are now performed and decisions made by administrative officers, and boards of commissioners which are termed '*quasi* judicial'; and such administrative or *quasi* judicial duties seem to be largely on the increase. The term implies that the act has some of the marks of a judicial act, and lacks some. The term presupposes both resemblance and difference. But what element it must contain to be *quasi* judicial it is not easy to determine on principle. We only know that it does not possess all the class characteristics of a judicial act proper." In that case this Court, though in the opinion characterizing the action of a county court in reviewing the legality or the illegality of the listing of property on the land books for taxation for the correction of such listing as "quasi judicial", held, in Point 2 of the syllabus, that the county court acted as an administrative board and that its action was not judicial within the meaning of Section 24, Article VIII of the Constitution. The power or the function relating to the incorporation of municipalities, vested in a county court by the statute, is similar in character to the power conferred by statute, formerly Section 18, Chapter 39, Code, 1891, now Code, 7-2-1, upon commissioners appointed by a circuit court to ascertain and determine the true location of a disputed boundary line between two counties. That function this Court, in *Summers County* v. *Monroe County,* 43 W. Va. 207, 27 S. E. 307, held to be legislative, and in the opinion said: "* * * the action of the circuit court in this matter is legislative, or, rather, administrative of a legislative power or function, not judicial action, because the formation of counties, and the fixing and alter-

ing of their boundaries, is purely a legislative function." Likewise, the function vested in a county court, by Section 19, Chapter 39, Code of 1923, now Code, 7-2-2, to consolidate two or more existing districts is a legislative function. *State ex rel. Collier* v. *County Court of Mingo County,* 97 W. Va. 615, 125 S. E. 576.

To the extent that the reasoning expressed in the cases of *In re Town of Union Mines,* 39 W. Va. 179, 19 S. E. 398; *Elder* v. *Incorporators of Central City,* 40 W. Va. 222, 21 S. E. 738; *Bloxton* v. *McWhorter, Judge,* 46 W. Va. 32, 32 S. E. 1004; *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715; *St. Marys* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164; *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872; and *Baker* v. *Workman,* 72 W. Va. 518, 78 S. E. 670, is inconsistent with the conclusion reached in this case with respect to the nature of the power now vested in the county court in connection with the incorporation of a municipality, those cases are disapproved. They are not overruled, however, for the reason stated *In re Proposal to Incorporate the Town of Chesapeake,* 130 W. Va. 527, 45 S. E. 2d 113, and for the additional reason that the statute under which they were decided has now been repealed and amended and its constitutionality is not involved in this proceeding.

The language of the statute, Chapter 83, Acts of the Legislature, 1949, Regular Session, with respect to the original incorporation of municipalities, is general and its application is not limited or restricted by express terms to municipalities of two thousand population or less. It is contended by the answering defendants that it applies to and governs the original incorporation of all municipalities, without regard to population, and that the proposed territory with its population in excess of two thousand may be incorporated under the statute. Prior to the adoption of Section 39 (a) of Article VI of the Constitution, known as the Home Rule Amendment, ratified in 1936, by virtue of Section 39 of Article VI which prohibited the Legislature from incorporating or amending the charter of a city, town or village containing a population

of less than two thousand by local or special law, cities, towns and villages with a population of less than two thousand were governed by a general statute which was incorporated in the Codes before 1931 as Chapter 47; and cities with a population of two thousand or more were incorporated by special charters granted by the Legislature.

The amendment adopted in 1936 is couched in this language: "No local or special law shall hereafter be passed incorporating cities, towns or villages, or amending their charters. The legislature shall provide by general laws for the incorporation and government of cities, towns and villages and shall classify such municipal corporations, upon the basis of population, into not less than two nor more than five classes. Such general laws shall restrict the powers of such cities, towns and villages to borrow money and contract debts, and shall limit the rate of taxes for municipal purposes, in accordance with section one, article ten of the Constitution of the State of West Virginia. Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to its municipal affairs: Provided, that any such charter or amendment thereto, and any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted."

If Chapter 83, Acts of the Legislature, 1949, Regular Session, be construed or applied to extend to and govern the formation of a municipality with a population in excess of two thousand, its certificate of incorporation, in the form provided in the statute, declares it to be a body corporate duly authorized, within the corporate limits prescribed in such charter, to exercise all the corporate powers conferred by Chapter 8 of the Code. Such cer-

tificate does not confer upon a municipality so incorporated any other powers, general or special, or any of the numerous particular powers provided for a municipality operating under a home rule charter by virtue of Chapter 56, Acts of the Legislature, 1937, Regular Session, enacted for the purpose of giving effect to the provisions of the Home Rule Amendment and which appears in Michie's Annotated Code, 1949, as Chapter 8A. So construed and applied, Chapter 83, Acts of the Legislature, 1949, Regular Session, Code, 1931, Chapter 8, Article 2, as amended, would deprive the electors of a municipality, of which the population exceeds two thousand, of the right to exercise "power and authority to frame, adopt and amend the charter of such corporation" expressly granted and secured to them by the provisions of the Home Rule Amendment. The words "frame" and "adopt" possess a clear and well known meaning and their meaning, contrary to the contention of the answering defendants that these words relate only to a previously existing charter, is the creation and the adoption of the original charter under which the municipality is incorporated and brought into valid legal existence in the first instance. In short, to apply the statute to the original incorporation of the proposed municipality of Belle, the population of which is in excess of two thousand, would deprive the electors within its area of their express constitutional right, under the Home Rule Amendment, to frame and adopt its charter. In consequence, to the extent that Chapter 83, Acts of the Legislature, 1949, Regular Session, applies to the original incorporation of a municipality in which the population is in excess of two thousand, it is violative of Section 39 (a) of Article VI of the Constitution and is, for that reason, null and void. The proposed municipality of Belle, therefore, can not be incorporated under that statute.

Under the provisions of the Home Rule Amendment relating to the enactment of general laws to empower the electors of a municipal corporation, in which the population exceeds two thousand, "to frame, adopt and amend"

its charter, "or to amend an existing charter thereof", the Legislature, in 1937, enacted a comprehensive general statute which applies to and governs existing municipal corporations with a population which exceeds two thousand. Chapter 56, Acts of the Legislature, 1937, Regular Session. That statute, however, does not apply to municipalities with a population of two thousand or less, *Hayes* v. *The Town of Cedar Grove*, 126 W. Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702; and it makes no provision for the original incorporation of a proposed municipality with a population in excess of two thousand. This situation was recognized, pointed out and commented upon by this Court in the case of *In re Proposal to Incorporate the Town of Chesapeake*, 130 W. Va. 527, 45 S. E. 2d 113. On that subject, and referring to Chapter 56, Acts of the Legislature, 1937, Regular Session, the opinion says: "We have searched in vain for any provision which would authorize the incorporation of towns and cities of more than two thousand population, and certainly there is nothing in that act which authorizes any action in respect to towns of less than two thousand population. The Home Rule Amendment provides that, under the general laws therein provided for, the electors of each municipal corporation wherein the population exceeds two thousand shall have the power and authority to frame and adopt or amend the charter of such corporation. While the Legislature had full power, under the Home Rule Amendment, to legislate with respect to towns of less population than two thousand, it is clear that it did not do so by Chapter 56 of the Acts of 1937, and that it left intact the provisions of Article 2 of Chapter 8 of the Code, retaining the authority to provide for the incorporation of towns and cities with a population of two thousand or more, although it apparently did not exercise that authority." As Chapter 83, Acts of the Legislature, 1949, Regular Session, to the extent that it applies to the incorporation of proposed municipalities with a population in excess of two thousand, is now held to be unconstitutional, null and void as violative of Section 39 (a) of Article VI of the constitution, there is no present valid statute under or by

virtue of which the original incorporation of a proposed municipality with a population in excess of two thousand may be accomplished.

As the conclusion reached concerning the constitutionality of Chapter 83, Acts of the Legislature, 1949, Regular Session, to the extent indicated and in the situation presented, is decisive of this proceeding, it is unnecessary to consider or discuss the other questions raised by the pleadings, and no opinion is expressed or entertained in regard to any of those questions.

The matter of the appropriateness of the remedy, however, in the circumstances disclosed in this proceeding, must be considered and determined. Many decisions of this Court hold that prohibition lies only against courts or tribunals which exercise judicial or quasi-judicial powers. *State ex rel. Collier* v. *County Court of Mingo County,* 97 W. Va. 615, 125 S. E. 576; *State ex rel. Noce* v. *Blankenship,* 93 W. Va. 273, 116 S. E. 524; *Baker* v. *O'Brien,* 79 W. Va. 101, 90 S. E. 543; *Campbell* v. *Doolittle,* 58 W. Va. 317, 52 S. E. 260; *Moore* v. *Holt,* 55 W. Va. 507, 47 S. E. 251; *Fleming* v. *Commissioners,* 31 W. Va. 608, 8 S. E. 267; *Brazie* v. *Fayette County Commissioners,* 25 W. Va. 213. In some of the decided cases the more narrow statement is that the writ goes "only against a judicial tribunal and judicial action". *Town of Hawk's Nest* v. *County Court,* 55 W. Va. 689, 48 S. E. 205; *Hassinger* v. *Holt,* 47 W. Va. 348, 34 S. E. 728. In *Board of Education* v. *Holt,* 54 W. Va. 167, 46 S. E. 134, in Point 1 of the syllbaus, this Court held: "The writ of prohibition only properly issues to prevent * * * judicial action by inferior tribunals exercising or assuming to exercise judicial functions. It never issues against administrative boards exercising purely administrative functions." As the county court, in the incorporation of a municipality under Chapter 83, Acts of the Legislature, 1949, Regular Session, as herein determined, does not exercise a power or a function which is judicial or quasi judicial, but which is legislative, or administrative of a legislative power or function, the remedy by prohi-

bition does not lie in this proceeding and, for that reason, the writ will not be issued.

*Writ denied.*

GIVEN, JUDGE, dissenting:

I agree that the writ should be denied for the reasons stated in point 4 of the syllabus, but I cannot agree that Chapter 83, Acts of the Legislature, 1949, to the extent that it applies to the incorporation of proposed municipalities, with a population in excess of two thousand, is unconstitutional, as violative of the Home Rule Amendment to the Constitution, Article VI, Section 39 (a). The applicable parts of that Amendment read: "* * * The legislature shall provide by general laws for the incorporation and government of cities, towns and villages * * *. Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have the power and authority to frame, adopt and amend the charter * * *." It will be noticed that this language does not require or compel the municipality to frame, adopt or amend its charter, but grants it the "power and authority" to do so. Nothing in the quoted language prevents the Legislature from establishing a charter for a municipality of over two thousand unless and until the municipality elects to do so. On the contrary, the Legislature is required to provide by general laws for the *government* of all cities, towns and villages. The Legislature is also required by "general law" to provide for the *incorporation* of all municipalities, whether of two thousand population or not, and there is merely preserved to any municipality of over two thousand population the right and authority to frame, adopt or amend its charter. Section 1, Article 2 of the Act of 1949, provides that: "Any part of any district * * * may be incorporated as a city, town or village * * *." This includes a proposed municipality of over two thousand population, for Section 1, Article 1 of the Municipal Home Rule Law, enacted by the 1937 Legislature (now Chapter 8A of the Code) defines "city" as a municipality with a population in excess of two thousand. Section 11 of Ar-

ticle 2 of the Act requires a county court, through its clerk, to issue a "certificate of incorporation" upon a finding by the court that the provisions relating to incorporation of municipalities have been complied with. Section 1 of Article 2 of the Home Rule Law reads: "The voters of any city may frame, adopt and amend the charter of a corporation in the manner provided by this article." Other sections of that Article make full provision for the framing, adoption or amending of charters.

From these clear provisions, I am of the opinion that the "certificate of incorporation" required to be issued by the county court is not to be considered a municipal charter, but is mere authority to the corporation to organize and to frame its own charter if it so elects, and to be governed by general statutes relating to the government of such corporation until the adoption of a charter. If this construction be somewhat strained, it is, nevertheless, justified by the rule that: "Whenever reasonably possible, courts must so construe statutes as to save their constitutionality, * * *." 16 C. J. S. Constitutional Law Section 98. "Every reasonable construction must be resorted to in order to save a statute from unconstitutionality." *State* v. *Massie*, 95 W. Va. 233, Pt. 3, 102 S. E. 514. I think this rule should apply with force here for the reason that many of those who assisted in the designing and adoption of the constitutional amendment (1935) also assisted in designing and enacting the Home Rule Law (1937), and amendments thereto.

Conceding for argument, however, that the certificate of incorporation amounts to a municipal charter, I do not believe that the act violates the Home Rule Amendment to the Constitution, since the amendment requires only that a municipal corporation of a population in excess of two thousand be permitted, if it so elects, to frame, adopt or amend its charter. This seems clear from the use of the words "electors of each municipal corporation", since it would be impossible for there to be a municipal corporation before the incorporation had taken place, and since it would be impossible for there to be electors of a

municipality before incorporation. The language does not require such municipality to frame or adopt its own charter, but merely preserves to it such right and a municipality may elect or not elect to exercise that right. "A municipality in adopting a charter as authorized by the home rule provision of the constitution is merely exercising a permissive authority of local self government conferred on all municipalities, * * *." 62 C. J. S. Constitutional Law 116, citing *State ex rel. Arey* v. *Sherrill,* 142 Ohio St. 574, 53 N. E. 2d 501. See *Morris* v. *Taylor,* 70 W. Va. 618, 74 S. E. 872.

Being of the opinion that the statutes mentioned fully provide for the incorporation of any city containing a population in excess of two thousand, and that the right of any such city to frame, adopt or amend its charter is fully preserved to it, I respectfully dissent as to the third point of the syllabus.